# EXHIBIT A


## Citation # 1
## 2000 us dist lexis 5855

FLOORCOVERINGS INTERNATIONAL, LTD., Plaintiff, vs. JAMES and TAMMIE SWAN,
Defendants.

00 C 1393

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN
DIVISION

2000 U.S. Dist. LEXIS 5855

April 25, 2000, Decided
April 25, 2000, Docketed

**DISPOSITION: [*1]** Defendants' motion (Doc 8-1) to dismiss for lack of subject matter
jurisdiction, or in the alternative to stay this matter and order arbitration denied.
Defendants' motion to dismiss certain claims for failing to meet the requirements of Rule 9
(b) and 9(c) denied. Ruling set for May 4, 2000 stricken.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant franchisees moved to dismiss plaintiff franchisor's suit
for breach of contract, fraud, deceptive trade practices, and other claims, arising from the
parties' franchise relationship, and defendants failure to pay franchise fees and royalties.
Alternately defendants sought motion to compel arbitration.

**OVERVIEW:** Plaintiff franchisor sued defendant franchisees on nine counts including breach
of contract, unfair competition, violation of the Illinois Deceptive Trade Practices Act (DTPA),
815 Ill. Comp. Stat. §510/1 et seq., fraud, and trademark infringement, after terminating
the franchise due to defendants continuing failure to pay the required franchise and royalty
fees in the parties' nonexclusive franchise relationship. Defendants moved to dismiss for
lack of subject matter jurisdiction, arguing that the dispute must be submitted to
arbitration, and asserting that plaintiff's claims were not sufficiently pled with particularity to
survive dismissal. The court denied the motions, finding the franchise agreement did not
require arbitration, and that plaintiff's claims were adequately stated under Fed. R. Civ. P. 8
(a), 9, and the DTPA.

**OUTCOME:** Defendants' motions to dismiss for lack of subject matter jurisdiction or to order arbitration, and to dismiss certain claims, were denied. Court found arbitration clause unambiguous. Plaintiff's deceptive trade practices claim was not based on fraud and was adequately stated, as were fraud and breach of contract claims.

**CORE TERMS:** franchise agreement, arbitration, elect, subject matter jurisdiction, choice of law, arbitration clause, binding arbitration, breach of contract, Illinois Deceptive Trade Practices Act, conditions precedent, motion to dismiss, injunctive relief, gross sales, particularity, meaningless, termination, injunction, plead, court of competent jurisdiction, contract law, last clause, provisional, injunctive, franchise, reasonable relationship, submit to arbitration, public policy, sponsorship, contravene, arbitrate

## LexisNexis(R) Headnotes

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss

*HN1* Fed. R. Civ. P. 12(b)(1) provides for dismissal of claims over which the federal court lacks subject matter jurisdiction.

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss

*HN2* In reviewing a Fed. R. Civ. P. 12(b)(1) motion to dismiss, the court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists.

Civil Procedure > Pleading & Practice > Pleadings > Interpretation

*HN3* The plaintiff bears the burden of establishing that the jurisdictional requirements have been met.

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss

*HN4* When a party moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1), the nonmoving party must support its allegations with competent proof of jurisdictional facts.

Civil Procedure > Alternative Dispute Resolution

*HN5* A court cannot force a party to arbitrate unless that party has entered into a contractual agreement to do so.

Civil Procedure > Alternative Dispute Resolution

*HN6* In order to determine whether the parties intended to submit to arbitration, a court reviews the contract at issue. In so doing, a court employs the standard methods of contract interpretation, using state-law principles. Ambiguities, however, are resolved in favor of arbitration.

Civil Procedure > State & Federal Interrelationships > Choice of Law

*HN7* A federal court applies the choice of law rules of the forum state to determine which state's substantive law governs the case.

Civil Procedure > State & Federal Interrelationships > Choice of Law

HN8 Illinois choice of law rules provide that an express choice of law contract provision will be given effect as long as it does not contravene Illinois public policy and the state chosen bears a reasonable relationship to the parties or the transaction.

Contracts Law > Contract Interpretation > Interpretation Generally
HN9 A court gives contract terms their ordinary meaning.

Contracts Law > Contract Interpretation > Interpretation Generally
HN10 A court interprets contracts so as to give the greatest possible effect to all provisions, rather than to leave a part of the contract unreasonable or of no effect.

Contracts Law > Contract Interpretation > Interpretation Generally
HN11 One of the most fundamental rules of construction is that a court should, if possible, construe a contract so as not to render any of its provisions meaningless.

Contracts Law > Defenses > Ambiguity & Mistake
HN12 A contract is ambiguous when it is subject to different, yet reasonable interpretations.

Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements
HN13 Fed. R. Civ. P. 9(b) provides that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements
HN14 In order to fulfill the requirements of Fed. R. Civ. P. 9(b), a plaintiff must allege the "who, what, when, and where" of the alleged fraud.

Contracts Law > Contract Conditions & Provisions > Conditions Precedent
HN15 For breach of contract claims, a claimant must plead the performance of conditions precedent.

Contracts Law > Contract Conditions & Provisions > Conditions Precedent
HN16 Fed. R. Civ. P. 9(c) provides that it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A claimant satisfies the requirements of Rule 9(c) by pleading facts from which an inference can be made that all conditions precedent were performed.

**COUNSEL:** For FLOORCOVERINGS INTERNATIONAL LTD, plaintiff: Andrew B. David, Suzanne Jane Massel, Sugar, Friedberg & Felsenthal, Chicago, IL.

For FLOORCOVERINGS INTERNATIONAL LTD, plaintiff: Michael R. Gray, Mackall, Crounse & Moore, Minneapolis, MN.

For JAMES SWAN, TAMMIE SWAN, defendants: Donald J. Townsend, Law Offices of Donald J. Townsend, Chicago, IL.

**JUDGES:** Charles P. Kocoras, United States District Court Judge.

**OPINIONBY:** Charles P. Kocoras

## OPINION: MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on Defendants' motion to dismiss for lack of subject matter jurisdiction or, in the alternative, to stay this action and order arbitration of this matter. In addition, Defendants' move to dismiss certain counts for failing to meet the requirements of Federal Rules of Civil Procedure 9(b) and 9(c). For the reasons set forth below, the Court **[*2]** denies Defendants' motions.

## BACKGROUND

Plaintiff Floorcoverings International, Ltd. ("FCI") filed a nine-count complaint against Defendants James and Tammie Swan (collectively, the "Swans"), alleging, inter alia, claims arising out of breach of contract and trademark infringement, resulting from the parties' franchise relationship.

FCI franchises a business system (the "Business System") for the sale and marketing of soft and hard flooring products and window blinds. The Business System employs unique techniques, special equipment and processes, standards and specifications, marketing methods and promotional techniques, which are all associated with the "Floor Coverings International" trademarks, trade names, and related marks (the "Marks"). On February 1, 1993, the Swans entered into a franchise agreement (the "Franchise Agreement") with FCI under which the Swans received a non-exclusive right and license to operate FCI franchises using the Business System in a designated market area using FCI Marks. Pursuant to the Franchise Agreement, the Swans were to pay FCI royalty fees, consisting of the greater of a fixed sum or a certain percentage of gross sales. The Swans also **[*3]** agreed to contribute to certain advertising costs. The Franchise Agreement subjects the Swans to late fees whenever the Swans are more than five days late on payments due.

Because of the Swans alleged continuing failure to make payments owing under the Franchise Agreement, FCI terminated the Franchise Agreement effective September 27, 1999. On March 8, 2000, FCI filed its nine count complaint, alleging, inter alia, breach of contract based on various violations, trademark infringement, unfair competition, violations of the Illinois Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq., and fraud. On March 20, 2000, because the Swans were allegedly continuing to use FCI's Marks and trade on FCI's goodwill, FCI moved for, and this Court granted, a preliminary injunction against such use. Presently, the Swans move to dismiss FCI's complaint for lack of subject matter jurisdiction, arguing that because this dispute must submit to arbitration, the Court lacks jurisdiction. In the alternative, the Swans maintain that the Court should stay this matter and order arbitration. The Swans also argue that certain counts fail to meet the requirements of Federal Rules of Civil Procedure **[*4]** 9(b) and 9(c).

## LEGAL STANDARD

*HN1* Rule 12(b)(1) provides for dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon the federal court. See In re Chicago, Rock Island & Pacific R.R. Co., 794 F.2d 1182, 1188

(7th Cir. 1986). *HN2* In reviewing a 12(b)(1) motion to dismiss, the court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists. See <u>United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996)</u>, citing <u>Bowyer v. United States Dep't of Air Force, 875 F.2d 632, 635 (7th Cir. 1989)</u>, cert. denied, <u>493 U.S. 1046, 110 S. Ct. 846, 107 L. Ed. 2d 840 (1990)</u>. *HN3* The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. See <u>Kontos v. United States Dep't of Labor, 826 F.2d 573, 576 (7th Cir. 1987)</u>. *HN4* When a party moves for dismissal pursuant to Rule 12 (b)(1), the nonmoving party must support its allegations with competent proof of jurisdictional facts. See <u>Thomson v. Gaskill, 315 U.S. 442, 446, 62 S. Ct. 673, 86 L. Ed. 951 (1942)</u>. **[\*5]** With these principles in mind, the Court evaluates the Defendants' motion.

## DISCUSSION

Although national policy encourages arbitration of disputes, submission to arbitration is consensual, not coercive. See <u>Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57, 62, 115 S. Ct. 1212, 1216, 1218, 131 L. Ed. 2d 76 (1995)</u>. Thus, *HN5* a court cannot force a party to arbitrate unless that party has entered into a contractual agreement to do so. See <u>First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)</u>; <u>AT&T Technologies v. Communications Workers of America, 475 U.S. 643 648, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986)</u>. *HN6* In order to determine whether the parties intended to submit to arbitration, a court reviews the contract at issue. See <u>AT&T Technologies, 475 U.S. at 648</u>. In so doing, a court employs the standard methods of contract interpretation, using state-law principles. See <u>Mastrobuono, 514 U.S. at 54</u>; <u>Perry v. Thomas, 482 U.S. 483, 492, 96 L. Ed. 2d 426, 107 S. Ct. 2520 (1987)</u>; <u>First Options of Chicago, 514 U.S. at 944</u>. **[\*6]** Ambiguities, however, are resolved in favor of arbitration. See <u>Mastrobuono, 514 U.S. at 62</u>.

Although neither party addresses it, a preliminary question exists as to which state's contract law applies. The Franchise Agreement has an express choice of law provision designating Georgia law as governing the construction of the contract, except in matters subject to the provision of the Illinois Franchise Disclosure Act. None of the claims are brought under the Illinois Franchise Disclosure Act, but Plaintiff at least seems to believe Illinois contract law governs as it cites to that body of law.

*HN7* A federal court applies the choice of law rules of the forum state to determine which state's substantive law governs the case. See <u>Serfecz v. Jewel Food Stores, Inc., 1997 U.S. Dist. LEXIS 13270</u>, No. 92 C 4171, 1997 WL 543116, at \*6 (N.D. Ill. Sept. 2, 1997); <u>Lachmund v. ADM Investor Servs., Inc., 1997 U.S. Dist. LEXIS 729</u>, No. 96 C 4143, 1997 WL 43214, at \*4, n.2 (N.D. Ill. Jan. 28, 1997). Thus, the Court applies Illinois choice of law rules. *HN8* Illinois choice of law rules provide that an express choice of law contract provision will be given effect as long as it does not contravene Illinois public **[\*7]** policy and the state chosen bears a reasonable relationship to the parties or the transaction. See <u>Paul Davis Systems of Northern Illinois, Inc. v. Paul W. Davis Systems, Inc., 1998 U.S. Dist. LEXIS 16912</u>, No. 98 C 2027, 1998 WL 749041, at \*3 (N.D. Ill. Oct. 15, 1998), citing

Potomac Leasing Co. v. Chuck's Pub, Inc., 156 Ill. App. 3d 755, 109 Ill. Dec. 90, 509 N.E.2d 751, 753-54 (Ill. App. Ct. 1987). Thus, because neither party even suggests that Georgia law would contravene Illinois public policy or that Georgia does not bear a reasonable relationship to the parties or the transaction, it would seem that the Court would apply Georgia contract law as agreed to in the parties' Franchise Agreement. Cf. Paul Davis Systems, 1998 U.S. Dist. LEXIS 16912, 1998 WL 749041, at *3. In any event, the Court notes that the choice of law is not determinative, because the outcome would remain the same whether the Court applies Georgia or Illinois law.

The Swans argue that the arbitration provision in the Franchise Agreement is ambiguous and that the strong federal policy favoring arbitration requires this Court to find that this matter must be submitted to arbitration. The arbitration provision provides, **[*8]** in relevant part:

> Except insofar as FCI elects to enforce this Agreement by judicial process, injunction or specific performance, any controversy, dispute, question or claim arising out of or relating to this Agreement or its interpretation, performance, or non-performance, or any breach hereof, including, without limitation, any claim that this Agreement or any part thereof is invalid, illegal or otherwise voidable or void, shall be submitted to final and binding arbitration process as it relates to each individual franchisee in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award may be entered in the highest state, provincial, or federal court having jurisdiction thereof; provided, however that this provision shall not be construed to limit any rights which FCI may have to apply to any court of competent jurisdiction for injunctive or similar provisional relief.

The Swans argue that although it seems initially that FCI may elect whether or not to arbitrate, the last clause above, which is set off by a semi-colon and which states, "provided, however that this provision shall not be construed to limit **[*9]** any rights which FCI may have to apply to any court of competent jurisdiction for injunctive or similar provisional relief," operates to require arbitration of all claims except those where FCI may require immediate access to the courts for injunctive relief to address emergency situations.

*HN9* A court gives contract terms their ordinary meaning. See Nalley v. Nationwide Mutual Fire Ins. Co., 221 Ga. App. 537, 538, 472 S.E.2d 82, 84 (Ga. Ct. App. 1996); Robert Half Int'l, Inc. v. Thompson, 1999 U.S. Dist. LEXIS 2719, No. 98 C 1080, 1999 WL 138849, at *3 (N.D. Ill. Mar. 5, 1999), citing Gray v. Mundelein College, 296 Ill. App. 3d 795, 695 N.E.2d 1379, 1386-87, 231 Ill. Dec. 260 (Ill. App. Ct. 1998). *HN10* Moreover, a court interprets contracts so as to give the greatest possible effect to all provisions, rather than to leave a part of the contract unreasonable or of no effect. See Quintanilla v. Rathur, 227 Ga. App. 788, 790, 490 S.E.2d 471, 475 (Ga. Ct. App. 1997); Robert Half Int'l, Inc., 1999 U.S. Dist. LEXIS 2719, 1999 WL 138849, at *3 (citation omitted). *HN11* "One of the most fundamental rules of construction is that a court should, if possible, construe a contract **[*10]** so as not to render any of its provisions meaningless." Altama Delta Corp. v. Howell, 225 Ga. App. 78, 79, 483 S.E.2d 127 (Ga. Ct. App. 1997); accord Shakman v.

Democratic Organization of Cook County, 1997 U.S. Dist. LEXIS 6029, No. 69 C 2145, 1997 WL 223054, at *4 (N.D. Ill. Apr. 30, 1997), citing Kerton v. Lutheran Church Extension Fund, 262 Ill. App. 3d 74, 199 Ill. Dec. 416, 634 N.E.2d 16, 18 (Ill. App. Ct. 1994).

With these principles in mind, the Court finds that the arbitration clause is unambiguous and allows FCI discretion to elect or not elect arbitration. **HN12**⚓A contract is ambiguous when it is subject to different, yet reasonable interpretations. See Garrett v. Women's Health Care of Gwinnett, 243 Ga. App. 53, 532 S.E.2d 164, 2000 WL 302651, at *3 (Ga. Ct. App. Mar. 24, 2000); Bock v. Computer Associates Int'l, Inc., 2000 U.S. Dist. LEXIS 5753, No. 99 C 5967, 2000 WL 310288, at *6 (N.D. Ill. Mar. 24, 2000) (citation omitted). The arbitration clause above is not subject to more than one reasonable interpretation. It clearly provides an exception to binding arbitration when FCI elects to enforce the Franchise Agreement "by judicial process, injunction or **[*11]** specific performance." That the arbitration clause also contains a limitation stating, "provided, however that this provision shall not be construed to limit any rights which FCI may have to apply to any court of competent jurisdiction for injunctive or similar provisional relief," should not and does not render FCI's ability to elect or not to elect arbitration meaningless. Rather, it serves as a catch-all that functions to preserve FCI's rights to injunctive relief, regardless of the manner in which FCI elects to enforce the Franchise Agreement. It would be unreasonable to read the last clause, in effect, as requiring binding arbitration as it would unnecessarily render the entire beginning portion of the arbitration clause meaningless. Moreover, although it may be redundant for the last clause to preserve FCI's right to injunctive relief in cases where FCI elects to enforce the Franchise Agreement through an injunction, it is not inconsistent. This is not a case where the scope of an arbitration clause is at issue. Instead, in this case the Franchise Agreement initially leaves the decision of whether or not to even submit to binding arbitration within FCI's discretion, and regardless **[*12]** of what FCI decides, the contract preserves FCI's right to injunctive relief. Because in this case FCI elected not to submit to binding arbitration, but to pursue its causes of action in this Court, the Court does not lack subject matter jurisdiction. Moreover, the Court declines to stay this matter and order arbitration in a situation where the contract does not require arbitration.

The Swans also contend that FCI's Illinois Deceptive Trade Practices claim and FCI's fraud claim are not plead with particularity and fail to meet the requirements of Federal Rule of Civil Procedure 9(b). **HN13**⚓Rule 9(b) provides that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ. P. 9(b).

As an initial matter, FCI's claim under the Illinois Deceptive Trade Practices Act (the "Act") does not constitute a fraud claim that must meet the requirements of Rule 9(b). The Act prohibits many types of deceptive practices, including "causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services." 815 ILCS 510/2(2) (1993). In its claim under the Act, by incorporation, **[*13]** FCI alleges that "Defendants infringed upon the rights of FCI and FCI's Marks in connection with the sale of floor covering products and services and by continuing to use FCI's Marks after termination without authority" and that "Due to Defendants' infringement, customers were and are likely to be confused as to the source, sponsorship and affiliation of the products and services sold by Defendants after termination while they continue to hold themselves out to be FCI franchisees." FCI's claim under the Act is not based on fraud, and

thus, it does not have to meet the requirements of Rule 9(b). But see <u>Mitsubishi Electric Corp. v. IMS Technology, Inc., 1997 U.S. Dist. LEXIS 15350,</u> No. 96 C 499, 1997 WL 630187 (N.D. Ill. Sept. 30, 1997) (where plaintiff sues under the Illinois Consumer Fraud and Deceptive Business Practices Act to recover for violations of the Illinois Deceptive Trade Practices Act and the claim is based on fraud rather than commercial disparagement, plaintiff must state claim with particularity). FCI's allegations are adequate to give the Swans notice of the claim as required by Rule 8(a), and thus, FCI states a proper claim under the Illinois Deceptive Trade Practices Act. **[\*14]**

With respect to its claim for fraud, FCI complies with Rule 9(b). **HN14** In order to fulfill the requirements of Rule 9(b), a plaintiff must allege the "who, what, when, and where" of the alleged fraud. See Uni\* <u>Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992).</u> FCI has done this by stating:

> 92. Prior to termination, Defendants falsely reported Gross Sales to FCI which were substantially less than Defendants' actual Gross Sales.
> 93. In purposely underreporting their Gross Sales to FCI, Defendants made representations of past or present material fact which were false when made and which Defendants knew were false.
> 94. Defendants made these representations to FCI with the intent that FCI rely on them.
> 95. FCI did rely on Defendants' false representations, and FCI has been damages as a result of its reliance.

The Court finds that this satisfies Rule 9(b).

Finally, the Swans allege generally that Counts I, II, VI, and VII, which allege breach of contract on various different bases, are all plead without mentioning that FCI has performed all the terms in the contract as required by Rule 9(c). **HN15** For breach of contract claims, a claimant must **[\*15]** plead the performance of conditions precedent. See <u>Redfield v. Continental Cas. Corp., 818 F.2d 596, 610 (7th Cir. 1987).</u> **HN16** Rule 9(c) provides that "it is sufficient to aver generally that all conditions precedent have been performed or have occurred." <u>Fed.R.Civ.P. 9(c).</u> A claimant satisfies the requirements of Rule 9(c) by pleading facts from which an inference can be made that all conditions precedent were performed. See <u>Chen v. Wang, 1996 U.S. Dist. LEXIS 19273,</u> No. 96 C 0681, 1996 WL 732517, at \*4 (N. D. Ill. Dec. 17, 1996), citing <u>Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc., 844 F. Supp. 1271, 1273 (N.D. Ill. 1994).</u> Under the terms of the Franchise Agreement, it seems that FCI's obligations consisted of granting the Swans a non-exclusive right and license to operate a FCI franchise, granting the Swans the use of FCI's Marks, and allowing the Swans the use of the Business System. FCI's complaint states facts from which it can be inferred that FCI performed these conditions precedent. Cf. <u>Chen, 1996 U.S. Dist. LEXIS 19273, 1996 WL 732517,</u> at \*4. Thus, FCI's breach of contract claims meet the requirements of Rule 9(c).

## CONCLUSION

For the reasons set forth **[*16]** above, the Court denies Defendants' motion to dismiss for lack of subject matter jurisdiction, or in the alternative to stay this matter and order arbitration. The Court also denies Defendants' motion to dismiss certain claims for failing to meet the requirements of Rule 9(b) and 9(c).

Charles P. Kocoras

United States District Court Judge

Dated: April 25, 2000


## Citation # 2
## 2002 us dist lexis 20738

PUBLICATIONS INTERNATIONAL, LTD., an Illinois corporation, Plaintiff, v. LEAPFROG ENTERPRISES, INC., a Delaware corporation, Defendant.

No. 01 C 3876

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2002 U.S. Dist. LEXIS 20738

October 23, 2002, Decided
October 29, 2002, Docketed

**DISPOSITION:  [*1]** Defendant's motion to dismiss for failure to state claim granted with respect to damages claim in Count II, granted without prejudice with respect to Count VII and denied with respect to Count V.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff company sued defendant company, alleging violations of the Lanham Act, 15 U.S.C.S. § 1051 et seq., and state law claims of unfair competition, deceptive trade practices, and false advertising. Defendant moved to dismiss three of seven counts for failure to state claims.

**OVERVIEW:** Count II alleged fraud in maintaining a trademark registration. The applicable statute was 15 U.S.C.S. § 1120. The court concluded that plaintiff did not state a claim under § 1120. Plaintiff did not allege that defendant itself made any fraudulent misrepresentations to the United States Patent and Trademark Office in connection with the maintenance of the registration at issue. Defendant's alleged knowledge of misrepresentations at the time it purchased the trademark did not support a claim for § 1120 liability. Count V alleged liability under the Illinois Deceptive Practices Act. Defendant argued that the claim failed to specify which of two statutes formed the basis of the claim and that supporting allegations lacked sufficient particularity. As to that claim, the court found dismissal improper. That claim was not subject to Fed. R. Civ. P. 9(b), but rather was subject to federal notice pleading. Count VII alleged common law unfair competition. Dismissal was proper as to that claim because plaintiff was required to state which state's common laws were at issue.

**OUTCOME:** The motion to dismiss was granted as to Count VII, and as to the damages claim in Count II. The motion was denied as to Count V.

**CORE TERMS:** registration, trademark, Lanham Act, fraudulent, motion to dismiss, misrepresentation, Illinois Consumer Fraud Act, unfair competition, registered, toy, Uniform Deceptive Trade Practices Act, misunderstanding, deceptive, procured, declaration, educational, assigned, goodwill, notice, false advertising, reasons stated, particularity, fraudulently, procurement, sponsorship, assignors, specify, unfair, trademark infringement, cancellation

## LexisNexis(R) Headnotes

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action

HN1 The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. In ruling on the motion, the court considers whether relief is possible under any facts that could be established consistent with the allegations. To this end, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to plaintiffs.

Trademark Law > Infringement Actions > Defenses > General Overview

HN2 See 15 U.S.C.S. § 1120.

Trademark Law > Protection of Rights > Registration > Fraudulent Registration
Trademark Law > U.S. Trademark Trial & Appeal Board Proceedings > Cancellations > General Overview
Trademark Law > Infringement Actions > Defenses > General Overview

HN3 15 U.S.C.S. § 1164(3) provides that at any time, any person who believes that he is or will be damaged, may file a petition to cancel a fraudulently registered mark.

Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements

HN4 Allegations of fraudulent procurement must be pled with particularity, pursuant to Fed. R. Civ. P. 9(b). Hence, a general allegation of fraud without an accompanying recitation of details is insufficient.

Torts > Business & Employment Torts > Unfair Business Practices
Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview

HN5 The Illinois Consumer Fraud and Deceptive Business Practices Act explicitly incorporates § 2 (815 Ill. Comp. Stat. 510/2) of the Uniform Deceptive Trade Practices Act by prohibiting unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any practice described in § 2 of the Uniform Deceptive Trade Practices Act. 815 Ill. Comp. Stat. 505/2. Section 2 of the Uniform Deceptive Trade Practices Act provides that a person engages in a deceptive trade practice when the person causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services or engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements

Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview

On its face, in both its title and the substantive text of the statute, the Illinois Consumer Fraud Act covers several types of conduct in addition to fraud, including all practices that violate § 2 (815 Ill. Comp. Stat. 510/2) of the Illinois Deceptive Trade Practices Act. For example, as noted above, § 2 of the Illinois Deceptive Trade Practices Act provides relief for business activities that create confusion or

*HN6* misunderstanding as to the source, sponsorship, approval, or certification of goods or services, as well as any other conduct which similarly creates a likelihood of confusion or misunderstanding. Such activity, which apparently is relevant to the instant dispute, does not necessarily constitute fraud in a manner that would implicate Fed. R. Civ. P. 9(b).

Civil Procedure > Pleading & Practice > Pleadings > Interpretation

Federal notice pleading requires only that the plaintiff set out in her complaint a short

*HN7* and plain statement of the claim that will provide the defendant with fair notice of the claim.

**COUNSEL:** For PUBLICATIONS INTERNATIONAL, LTD., plaintiff: Wayne B. Giampietro, Michael John Merrick, Witwer, Poltrock & Giampietro, Chicago, IL.

For PUBLICATIONS INTERNATIONAL, LTD., plaintiff: William R Golden, Margaret Ferguson, Kelley, Drye & Warren, New York, NY.

For PUBLICATIONS INTERNATIONAL, LTD., plaintiff: Christopher Todd Sheean, Benjamin Todd Vinson, Kelley Drye & Warren LLP, Chicago, IL.

For LEAPFROG ENTERPRISES, INC., defendant: Anne E. Rea, Eric Stephen Mattson, Sidley Austin Brown & Wood, Chicago, IL.

For LEAPFROG ENTERPRISES, INC., defendant: John W. Crittenden, Nate A. Garhart, Lisa M. Greenwald, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, CA.

For LEAPFROG ENTERPRISES, INC., defendant: Tracie L Brown, Cooley Godward LLP, San Francisco, CA.

For LEAPFROG ENTERPRISES, INC., defendant: Andrew Hartman, Cooley Godward LLP, Broomfield, CO.

For LEAPFROG ENTERPRISES, INC., counter-claimant: Anne E. Rea, Eric Stephen Mattson, Sidley Austin **[*2]** Brown & Wood, Chicago, IL.

For LEAPFROG ENTERPRISES, INC., counter-claimant: John W. Crittenden, Nate A. Garhart, Lisa M. Greenwald, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, CA.

For LEAPFROG ENTERPRISES, INC., counter-claimant: Tracie L Brown, Cooley Godward LLP, San Francisco, CA.

For LEAPFROG ENTERPRISES, INC., counter-claimant: Andrew Hartman, Cooley Godward

LLP, Broomfield, CO.

For PUBLICATIONS INTERNATIONAL, LTD., counter-defendant: Wayne B. Giampietro, Michael John Merrick, Witwer, Poltrock & Giampietro, Chicago, IL.

For PUBLICATIONS INTERNATIONAL, LTD., counter-defendant: William R Golden, Margaret Ferguson, Kelley, Drye & Warren, New York, NY.

For PUBLICATIONS INTERNATIONAL, LTD., counter-defendant: Christopher Todd Sheean, Benjamin Todd Vinson, Kelley Drye & Warren LLP, Chicago, IL.

**JUDGES:** Robert W. Gettleman, United States District Judge.

**OPINIONBY:** Robert W. Gettleman

## OPINION: MEMORANDUM OPINION AND ORDER

Publications International, Ltd. filed a seven-count amended complaint seeking injunctive and monetary relief against LeapFrog Enterprises, Inc., alleging numerous violations of the Lanham Act, 15 U.S.C. § 1051 **[\*3]** et seq., as well as state law claims of unfair competition, deceptive trade practices, and false advertising. n1 Defendant has filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss three of the seven counts of the amended complaint for failure to state claims. For the reasons stated below, defendant's motion to dismiss is granted in part and denied in part.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Defendant has also filed counterclaims for trademark infringement and unfair competition, which are unrelated to the instant motion.


- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## BACKGROUND n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n2 In distilling the factual background of the instant dispute, the court is not limited merely to the allegations in the complaint and exhibits attached thereto. Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are both central to the plaintiff's claim and referenced in the complaint. Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993).


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*4]**

Publications International, Ltd. ("PIL") is an Illinois corporation, with its headquarters and principal place of business located in Lincolnwood, Illinois. PIL produces, distributes and sells children's books throughout the United States on topics ranging from baby's first vocabulary

to favorite bible stories. Since 1990, PIL has used a mark consisting of the words "LEAP FROG" in white block letters, beneath which is the depiction of a green frog displayed against a darker green rectangle, along with the "TM" symbol. This designation has been used on a number of PIL's book sets, including collections of Christmas stories, Beatrix Potter animal stories, fairy tales, and nature stories, as well as CD-Roms, plush toys, and flashcards. These products have been sold in a variety of retail venues, including Target, Wal-Mart, K-Mart, grocery stores and bookstores.

LeapFrog Enterprises, Inc. ("LeapFrog") is a Delaware corporation, with its headquarters and principal place of business located in Emeryville, California. LeapFrog's predecessor, LeapFrog RBT, LLC ("LeapFrog RBT") was founded in 1995. LeapFrog sells educational toys for infants and toddlers, including interactive children's **[*5]** books.

In 1984, Willowisp Press, Inc. ("Willowisp I") registered a trademark for children's books consisting of the words LEAPFROG SERIES LIMITED VOCABULARY, arranged in a circle with the depiction of a sitting cross-eyed frog, which was assigned U.S. Reg. No. 1,306,993 (the "'993 registration") by the United States Patent and Trademark Office (PTO). Plaintiff alleges that only two titles bearing this logo were ever distributed or offered for sale by Willowisp I or its successors-in-interest, and the entire saleable inventory of these books was disposed of or sold by July 1988.

On July 29, 1988, Willowisp I merged into School Book Fairs, Inc. ("School Book Fairs"), a Florida corporation; however, this merger was not recorded in the PTO. As a result, title to the '993 registration remained in the name of Willowisp I. On August 2, 1988, a new corporation bearing the name Willowisp Press, Inc. was incorporated in Florida ("Willowisp II"). According to public records attached to plaintiff's complaint, Willowisp II and Willowisp I had identical addresses, as well as the same board of directors and officers.

In August 1990, Willowisp II filed a combined declaration pursuant to Sections **[*6]** 8 and 15 of the Lanham Act, affirming that the '993 registration had been in continuous use over the preceding five years and was still in use in commerce on children's books, thus preserving the registration of the trademark on the principal register of the PTO. On April 24, 1992, Willowisp II merged into SFB Services, Inc. On July 20, 1994, Willowisp II assigned the '993 registration to School Book Fairs.

In 1995, LeapFrog RBT adopted the word LEAPFROG and a designation consisting of a depiction of a green frog on a block as a trademark for a toy phonics bus. In 1997, LeapFrog RBT applied to register this design mark as a trademark for children's educational toys. The registration was blocked, however, by the '993 registration. Plaintiff alleges that after ascertaining that the '993 registration was not being used in commerce in 1997, LeapFrog RBT sought to purchase the mark and related registration to enable the registration of its own design mark. This purchase was allegedly consummated in a quitclaim assignment on July 18, 1996, in which LeapFrog RBT paid School Book Fairs a "nuisance sum" for an assignment in-gross of bare title to the '993 registration. Plaintiff alleges that **[*7]** neither goodwill nor related business assets was conveyed to LeapFrog RBT with the '993 registration. According to the assignment document that School Book Fairs recorded with the PTO, however, goodwill was in fact conveyed along with the trademark. n3

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The court notes that the notice of assignment submitted to the PTO must be distinguished from the actual deed conveying the trademark to LeapFrog RBT.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On September 23, 1997, LeapFrog RBT assigned its rights in this trademark to defendant, allegedly without goodwill. Defendant subsequently registered several related marks for electronic educational toys, educational software, school bags and children's books. Moreover, defendant also allegedly adopted and used a number of "LEAPFROG" or "LEAP" formative marks, such as LEAPPAD and LEAPFROG LEARNING POND, in conjunction with the registered trademarks. Plaintiff alleges that defendant has undertaken an aggressive advertising campaign involving these marks, which has caused reverse confusion and misled the trade and **[*8]** consumers into believing that PIL's LEAP FROG books and products "emanated from, or were somehow approved or sponsored by defendant."

Accordingly, in its amended complaint, plaintiff seeks injunctive and monetary relief on the basis of the following seven counts: (I) use of false marks which are likely to cause confusion in violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (II) fraudulent maintenance of a federal registration in violation of §§ 14 and 38 of the Lanham Act, 15 U.S.C. §§ 1064(3) and 1120; (III) abandonment of the '993 registration, within the meaning of § 45 of the Lanham Act, 15 U.S.C. § 1127; (IV) false advertising in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (V) deceptive trade practices in violation of the Illinois Consumer Fraud Deceptive Business Practices Act, 815 ILCS 505/2; (VI) false advertising and unfair business practices under §§ 17200 et seq. of the California Business and Professional Code; and (VII) "trade name and trademark infringement and acts of unfair competition in violation of the common **[*9]** law of the states of Illinois, California, and of the other states of the Union." Pursuant to Fed. R. Civ. P. 12(b)(6), defendant has moved to dismiss Counts II, V, and VII for failure to state claims. For the reasons stated below, defendant's motion is granted with respect to Counts II and VII and denied with respect to Count V.

## ANALYSIS

HN1 The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on the motion, the court considers whether relief is possible under any facts that could be established consistent with the allegations. Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). To this end, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to plaintiffs. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). With these standards in mind, the court analyzes Counts II, V, and VII.

Count II - Fraud in Maintaining a Trademark Registration

Section 38 of the Lanham Act, 15 U.S.C. § 1120, **[*10]** provides:

*HN2* Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

Section 14(3), 15 U.S.C. § 1064(3), further provides that, *HN3* at any time, "any person who believes that he is or will be damaged," may file a petition to cancel a fraudulently registered mark.

At the outset, the court notes that *HN4* allegations of fraudulent procurement must be pled with particularity, pursuant to Fed. R. Civ. P. 9(b). Oreck Corp. v. Thomson Consumer Elec., Inc., 796 F. Supp. 1152, 1159 (S.D.Ind. 1992). Hence, a general allegation of fraud without an accompanying recitation of details is insufficient. Id.

In Count II of its amended complaint, plaintiff seeks cancellation of the '993 registration under § 14(3), as well as damages under § 38. Plaintiff alleges that the false Section 8 affidavit filed by Willowisp II constituted fraud, and that defendant "knew or should have known by a cursory examination **[*11]** of the Florida corporate records that the '993 registration was invalid and of no force and effect, and... knew its title to [the '993 registration] rested on a series of invalid assignments-in-gross in which no goodwill or related assets were conveyed with the trademark."

In response, defendant asserts three distinct grounds for dismissing plaintiff's claim for damages under § 38. First, defendant maintains that because plaintiff has not alleged that LeapFrog "procured" the '993 registration, or made any false statements to the PTO, LeapFrog cannot be liable in damages to plaintiff under § 38 of the Lanham Act. Defendant also asserts that Count II is barred by the applicable statute of limitations. Last, defendant contends that plaintiff has not alleged its injury with sufficient particularity, as required under Fed. R. Civ. P. 9(b). Because the court concludes that the first ground for dismissal of Count II is dispositive, the court need not address the potential merits of defendant's other arguments. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 The court notes, however, that statute of limitations is an affirmative defense, which plaintiff is not required to plead around in a complaint. See Leavell v. Kieffer, 189 F.3d 492, 494 (7th Cir. 1999).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*12]**

Plaintiff maintains that Elec. Info. Publ'ns, Inc. v. C-M Periodicals, 1969 U.S. Dist. LEXIS 10551, 163 U.S.P.Q. 624 (N.D.Ill. 1969), undermines defendant's argument that its alleged awareness of Willowisp II's fraudulent misrepresentations does not result in liability under § 38. In Elec. Info. Publ'ns, the court imposed § 38 liability on EIP, which had purchased a mark that was obtained through fraudulent representations by another company, Ahrens. In

finding liability, the court noted that, at the time of the purchase, EIP knew that Ahrens had not used the mark for several years. 163 U.S.P.Q. at 630. Moreover, after the purchase, EIP "represented, and continued to represent, to the Patent Office... that the two former Ahrens registrations were validly continued," and filed false affidavits with the PTO to maintain its registrations. Id. at 631. The court therefore concluded that the federal registrations at issue were "procured and maintained by [EIP's] purposeful misrepresentation of the facts to the Patent Office concerning [EIP's] and [Aherns'] transactions and use, and thus were falsely and fraudulently registered within the meaning of [§ 38]. **[\*13]** " Id. at 632.

Notwithstanding the arguable similarities between Elec. Info. Publ'ns and the instant dispute, and putting aside the appropriateness of awarding § 38 liability for misrepresentations made in connection with maintenance, rather than procurement, of a registration, the court concludes that plaintiff has not stated a claim against LeapFrog under § 38. In contrast to Elec. Info. Publ'ns, plaintiff in the instant case has not alleged that defendant itself made any fraudulent misrepresentations to the PTO in connection with the maintenance of the registration at issue.

The amended complaint merely states that the '993 registration was "fraudulently maintained by the filing of a false Section 8 Declaration... by a declarant that was not the owner of said registration." This allegation conspicuously fails to identify defendant or its predecessor, LeapFrog RBT, as the party that allegedly made the misstatements. Indeed, plaintiff concedes elsewhere in the complaint that Willowisp II actually filed the allegedly fraudulent affidavits. Moreover, the fraudulent misstatements were submitted to the PTO in 1990, five years before LeapFrog RBT, defendant's predecessor, **[\*14]** existed as an entity. Consequently, based on the allegations in the amended complaint, any insinuation that LeapFrog acted in concert with Willowisp II when it filed the allegedly fraudulent affidavits is baseless.

Further, the subsequent assignment of the '993 registration to LeapFrog does not result in § 38 liability against LeapFrog. Plaintiff cites to Marshak v. Treadwell, 58 F. Supp. 2d 551, 557 (D.N.J. 1999), aff'd 240 F.3d 184 (3d Cir. 2001), for the proposition that the assignee of a trademark stands in the shoes of his assignors and can have no greater trademark rights than they had. In Marshak, the district court cancelled the plaintiff's trademark after the jury determined that the plaintiff's assignors had invalidly procured a trademark that they subsequently assigned to the plaintiff. Id. at 561. The court notes, however, that the counterclaim at issue in Marshak was brought under § 14(3) for cancellation, and did not involve a § 38 claim for damages. Hence, the court in Marshak expressed no opinion on the appropriateness of levying damages against an assignee for the alleged fraud of his assignors.

Thus, **[\*15]** defendant's alleged knowledge of the misrepresentations at the time it purchased the trademark does not support a claim for § 38 liability. Plaintiff cites to Merry Hull & Co. v. Hi-Line Co., 243 F. Supp. 45 (S.D.N.Y. 1965), and Schwinn Bicycle Co. v. Murray Ohio Mfg. Co., 339 F. Supp. 973 (M.D.Tenn. 1971), for the proposition that, to state a claim under § 38, plaintiff need only "allege that LeapFrog had knowledge of any false means or fraudulent or false representations made with respect to the registration at issue." Plaintiff's reliance on these cases is misplaced, however, because both Merry Hull and Schwinn involved allegations that the parties themselves, or their officers, made the

misrepresentations in their applications for registration. See, e.g., Schwinn, 339 F. Supp. at 984 ("Before Schwinn can incur liability under [§ 38], Murray must present sufficient evidence to support a finding that Schwinn procured registration by a declaration or representation that is either incorrect or a willful attempt to mislead the Patent Office."). (Emphasis added.) As the plain text of the statute suggests, it is the **[*16]** "procurement" of the fraudulent registration that triggers damages under § 38.

Accordingly, the court concludes that, to the extent Count II purports to state a claim for damages under § 38 of the Lanham Act, that claim must be dismissed. In so holding, the court notes that plaintiff's claim for cancellation under § 14(3) is not affected by this ruling.

Count V - Illinois Deceptive Practices Act

In Count V, plaintiff incorporated the preceding paragraphs of the amended complaint, and asserted that "the aforesaid acts of Defendant, LeapFrog, constitute deceptive trade practices and acts in the conduct of Defendant's business in violation of the Illinois Consumer Fraud Deceptive Practices Act, 815 ILCS 505/2." In its motion to dismiss, defendant maintains that Count V fails to specify which of two Illinois statutes forms the basis of plaintiff's claim, and that the supporting allegations lack sufficient particularity. In response, plaintiff asserts that the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2, has been incorporated into the Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/2. Plaintiff further asserts that it **[*17]** is "well-settled that the elements of a good § 43(a) Lanham Act claim overlap with the elements of a claim under the Illinois Uniform Deceptive Trade Practices Act, provided that conduct within Illinois is involved."

*HN5* The Illinois Consumer Fraud and Deceptive Business Practices Act (the "Illinois Consumer Fraud Act") explicitly incorporates § 2 of the Uniform Deceptive Trade Practices Act by prohibiting "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to ... the use or employment of any practice described in § 2 of the 'Uniform Deceptive Trade Practices Act.'" 815 Ill. Comp. Stat. § 505/2. Section 2 of the Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2, provides that "A person engages in a deceptive trade practice when...the person... (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services... (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

Having established that the Illinois Consumer Fraud Act does in fact incorporate § 2 of the Uniform Deceptive Trade Practices Act, **[*18]** the next issue becomes the degree of specificity with which plaintiff must plead its claim. Defendant contends that plaintiff's claim is subject to the heightened pleading requirements set forth in Fed. R. Civ. P. 9(b), described above. See Gallagher Corp. v. Massachusetts Mut. Life Ins. Co., 940 F. Supp. 176, 180 (N.D. Ill. 1996). The plain text of the Illinois Consumer Fraud Act belies defendant's contention, however.

*HN6* On its face, in both its title and the substantive text of the statute, the Illinois Consumer Fraud Act covers several types of conduct in addition to fraud, including all practices that violate § 2 of the Illinois Deceptive Trade Practices Act. See Mitsubishi Elec.

Corp. v. IMS Technology, Inc., 1997 U.S. Dist. LEXIS 15350, 1997 WL 630187, at *10 (N.D. Ill. Sept. 30, 1997); Hoffman v. Szyszko, 1995 U.S. Dist. LEXIS 12680, 1995 WL 519815, at *5 (N.D.Ill. Aug. 30, 1995). For example, as noted above, § 2 of the Illinois Deceptive Trade Practices Act provides relief for business activities that create "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," n5 as well as "any other conduct which similarly creates a likelihood **[*19]** of confusion or misunderstanding." Such activity, which apparently is relevant to the instant dispute, does not necessarily constitute fraud in a manner that would implicate Fed. R. Civ. P. 9(b). See, e.g., Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc., 657 F. Supp. 1486, 1494 (N.D.Ill. 1987). Therefore, Count V is subject to *HN7* federal notice pleading, which requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 This language is practically identical to the language in § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), asserted in Count I of the complaint, which provides relief for misrepresentations that are "likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." Defendant has not asserted that plaintiff's Lanham Act claim is subject to the heightened pleading standards outlined in Fed. R. Civ. P. 9(b).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*20]**

As noted above, in evaluating a motion to dismiss, the court must read the allegations in the complaint in a light most favorable to the plaintiff, and ask whether relief is possible under any facts that could be established consistent with the allegations. Although the court would prefer for plaintiff to specify which subsections were allegedly violated by defendant, plaintiff's failure to do so is not grounds for dismissal under notice pleading. Indeed, the allegations in the complaint are sufficient to put defendant on notice with respect to what claims it must defend against in Count V, notwithstanding plaintiff's typographical errors. Accordingly, the court denies defendant's motion to dismiss Count V. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 In the event that plaintiff does file an amended complaint, the court encourages plaintiff to correct errors related to its citations to the Illinois Consumer Fraud Act and Illinois Uniform Deceptive Trade Practices Act.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Count VII - Common Law Unfair Competition

In Count VII, plaintiff alleges **[*21]** "trade name and trademark infringement and acts of unfair competition in violation of the common law of the states of Illinois, California, and of the other states of the Union." In its motion to dismiss, defendant contends that plaintiff's incorporation of 91 paragraphs of the complaint fails to notify LeapFrog which paragraphs allegedly support the claim of unfair competition, and that plaintiff's reliance on the law of every state of the union "fails to provide LeapFrog 'fair notice' of exactly what alleged facts and laws it is supposed to defend against."

While the court does not take issue with plaintiff's incorporation of the previous 91 paragraphs of its complaint, the court does conclude that plaintiff must specify which states' common laws are at issue. Indeed, the damages available for an unfair competition claim, as well as the specific elements thereof, may vary significantly from state to state. Hence, the court grants defendant's motion to dismiss Count VII without prejudice.

## CONCLUSION

For the reasons stated herein, defendant's motion to dismiss for failure to state a claim is granted with respect to the damages claim in Count II, granted without prejudice **[*22]** with respect to Count VII, and denied with respect to Count V.

**ENTER: October 23, 2002**

**Robert W. Gettleman**

**United States District Judge**