# UNREPORTED CASES

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2001 WL 1734736 (W.D.Pa.), 61 U.S.P.Q.2d 1288
**(Cite as: Not Reported in F.Supp.2d)**

C
Briefs and Other Related Documents

United States District Court,W.D. Pennsylvania.
CLI CORPORATION, Plaintiff,
v.
LUDOWICI USA, Ludowici Mineral Processing Equipment, Inc. Defendants.
**No. Civ.A 01-801.**

Nov. 14, 2001.

Eric P. Reif, Bryan K. Shreckengost, Pietragallo, Bosick & Gordon, Pittsburgh, PA, for Plaintiff.
James A. Mercolini, David W. Snyder, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, Joseph Lucci, David R. Bailey, Woodcock, Washburg, Kurtz, Mackiewicz & Norris, Philadelphia, PA, for Defendants.

*MEMORANDUM ORDER*

CINDRICH, J.
*1 Pending in this patent infringement case is defendant Ludowici Mineral Processing Equipment, Inc.'s ("LMP") motion to dismiss count V of the complaint, which alleges tortious interference with existing and prospective business advantage. LMP argues that this claim is preempted by federal patent law. We agree.

"For conflict preemption, we consider whether the state law actions frustrate the accomplishment and execution of the full purposes and objectives of Congress." *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318 (Fed.Cir.1998). "To determine whether these state law torts are in conflict with federal patent law and accordingly preempted, we assess a defendant's allegedly tortious conduct. If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law." *Id.*

Four elements must be pleaded to make out a claim of tortious interference with business and professional relationships: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *Pawlowski v. Smorto,* 403 Pa.Super. 71, 588 A.2d 36, 39-40 (Pa.Super.1991); *Advent Sys., Ltd. v. Unisys Corp..,* 925 F.2d 670, 672 (3d Cir.1991). The complaint in this case avers that " LMP has improperly sought to capitalize upon the market for magnetic separators created by CLI by offering for sale, and selling, the LM Separators which infringe the 597 Patent." Paragraph 43.

As the complaint makes clear, the "absence of privilege or justification" prong of the test will require resolution of the patent infringement issue. If defendant did not breach the patent, it was privileged and justified in marketing its products. Thus, the state tort claim is based on the same conduct that is governed by federal patent law. Accordingly, it is preempted.

In accordance with the above, defendant's motion to dismiss count V of the complaint, Doc. No. 14, is GRANTED.

SO ORDERED.

W.D.Pa.,2001.
CLI Corp. v. Ludowici USA
Not Reported in F.Supp.2d, 2001 WL 1734736 (W.D.Pa.), 61 U.S.P.Q.2d 1288

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2
Not Reported in F.Supp.2d, 2001 WL 1734736 (W.D.Pa.), 61 U.S.P.Q.2d 1288
**(Cite as: Not Reported in F.Supp.2d)**

- 2:01CV00801 (Docket) (May. 04, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                              Page 1
Not Reported in F.Supp.2d, 2001 WL 641415 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
NAKAJIMA ALL CO. LTD., Plaintiff,
v.
SL VENTURES, CORP. and Stephen Lowy, Defendants.
SL VENTURES, CORP., Counter-plaintiff and Counter-defendant
v.
CAROLINA WHOLESALE OFFICE MACHINE CO., INC., Counter-defendant and Counter-plaintiff
No. 00 C 6594.

June 4, 2001.

MEMORANDUM OPINION AND ORDER
GETTLEMAN, District J.
*1 In the course of being sued by Nakajima All Co., Ltd. ("Nakajima"), defendants SL Ventures, Corp. ("SL") and Stephen Lowy ("Lowy"), SL's president and principal shareholder, filed a third party claim against Carolina Wholesale Office Machine Co., Inc. ("Carolina"), which then filed counterclaims against both defendants alleging violations of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I), common law unfair competition (Count II), the Illinois Consumer Fraud and Deceptive Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1 *et seq.* (Count III), and the Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1 *et seq.* (Count IV). SL and Lowy (together, "defendants") have moved to dismiss Carolina's counterclaims pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6). For the reasons set forth below, the motion is denied in part and granted in part.

FACTS

For purposes of a motion to dismiss, the court accepts the factual allegations of the counterclaim as true and draws all reasonable inferences in favor of Carolina. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir.1996).

Nakajima manufactures and sells typewriters equipped with word processing and spell checking capabilities, along with the parts and accessories for those machines. Since 1989, Nakajima has marketed and sold those products in the United States and elsewhere using distinctive marks, which have been registered with the United States Patent and Trademark Office.

According to Carolina, Nakajima entered into distribution and license agreements with SL and Lowy in 1994, giving SL the exclusive right to distribute Nakajima products in the United States. On June 30, 2000, Nakajima advised SL that as of July 31, 2000, Nakajima was terminating its prior agreements with SL. Accordingly, Nakajima demanded that SL cease using Nakajima's marks and cease holding itself out as the exclusive Nakajima distributor in the United States as of that date.

On or about August 3, 2000, and November 8, 2000, respectively, Carolina entered into distribution and license agreements with Nakajima, making Carolina the exclusive United States and Caribbean distributor of Nakajima products and the only company licensed to use Nakajima's marks within that area. Carolina alleges "on information and belief" that "since July 31, 2000," SL has "continued to use" Nakajima's marks and has "continued to misrepresent to customers that SL ... is the exclusive distributor and/or an authorized distributor of [p]roducts bearing" Nakajima's marks. Likewise, Carolina alleges "on information and belief" that Lowy "has been personally misrepresenting to customers that SL ... is the exclusive distributor and/or authorized distributor of the [p]roducts and licensee [sic] of [Nakajima's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00722-GMS   Document 25-2   Filed 04/17/2006   Page 5 of 20

Not Reported in F.Supp.2d                                                                 Page 2
Not Reported in F.Supp.2d, 2001 WL 641415 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

marks] since July 31, 2000." Further, Carolina claims that: "As the true exclusive distributor of the [p]roducts since August 3, 2000, Carolina Wholesale has been damaged" by defendants' actions.

## LEGAL STANDARD

*2 In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the claimant's allegations entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Travel All Over the World,* 73 F.3d at 1429-30. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990).

## DISCUSSION

Defendants raise three major contentions in arguing that Carolina's counterclaims should be dismissed. First, they argue that Carolina lacks standing to bring any of its claims pursuant to the terms of the distribution and licensing agreements it signed with Nakajima. Defendants also argue that Count III fails to state a claim because Carolina has not alleged a sufficient consumer nexus to allow it to bring suit under the Consumer Fraud Act. Finally, defendants argue that Counts II, III, and IV are not alleged with the particularity required by Fed.R.Civ.P. 9(b). The court will address each of defendants' arguments in turn.

### I. Standing under the Lanham Act

According to defendants, Carolina lacks standing to bring a claim under the Lanham Act because the distribution and licensing agreements it signed with Nakajima provide that Nakajima alone is authorized to initiate claims with regard to any infringement or improper use of Nakajima's marks. *See Finance Inv. Co. (Bermuda) v. Geberit AG,* 165 F.3d 526, 531-32 (7th Cir.1998) (affirming summary judgment against plaintiff licensees where "the express terms of the [plaintiffs'] license prohibited any of them from bringing suit in their own capacity ") ("Because the license is the sole source giving the plaintiffs any interest in the ... mark, that same license's refusal to give them the right to sue under these circumstances strips them of the right to raise a § 43(a) claim .")

The court need not address defendants' argument, however, because even if they are correct about the ramifications of *Finance Investment* on Carolina's claims, Nakajima and Carolina have represented to the court that Carolina received permission from Nakajima prior to filing its counterclaims, pursuant to the license agreement between the two. Thus, defendants' motion to dismiss the counterclaims on this basis is denied.

> FN1. For the sake of expediency and convenience, the court obtained these assurances from counsel for both Nakajima and Carolina during a status hearing with all parties present on May 16, 2001, and agreed to rule accordingly to prevent the need for Carolina to file an amended counterclaim on this basis.

### II. Consumer Nexus under the Consumer Fraud Act

Defendants' next contention is that Carolina has failed to allege a sufficient consumer nexus to sustain a claim under the Consumer Fraud Act.

The Consumer Fraud Act prohibits the " employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact ... in the conduct of any trade or commerce." 815 ILCS § 505/2. "As its name indicates, the Consumer Fraud Act is primarily concerned with protecting consumers." *Industrial Specialty Chems. v. Cummins Engine Co.,* 902 F.Supp. 805, 811 (N.D.Ill.1995). Under the Act, a " consumer" is defined as one "who purchases or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00722-GMS    Document 25-2    Filed 04/17/2006    Page 6 of 20

Not Reported in F.Supp.2d                                                Page 3
Not Reported in F.Supp.2d, 2001 WL 641415 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e).

*3 Those bringing Consumer Fraud Act claims need not be consumers, however. *See* 815 ILCS 505/10(a); 815 ILCS 505/1(c); *Industrial Speciality Chems.*, 912 F.Supp. at 811; *D.K. Heating Sys. v. Warmly Yours.com, Inc.*, 2000 U.S. Dist. LEXIS 610, *13-14, 2000 WL 97283, *5 (N.D.Ill. Jan. 25, 2000). "The Consumer Fraud Act also protects business persons from fraud and unfair competition." *Mitsubishi Elec. Corp. v. IMS Tech.*, 1997 U.S. Dist. LEXIS 15350, *26, 1997 WL 630187, *9 (N.D.Ill. Sept. 30, 1997) (citing *Law Offices of William J. Stogsdill v. Cragin Fed. Bank for Sav.*, 645 N.E.2d 564, 565 (Ill.App.Ct.1995)).

In the instant case, Carolina, a wholesale distributor of Nakajima products, does not meet the definition of a "consumer" under the Consumer Fraud Act. Thus, Carolina must establish a nexus to consumer protection concerns in pleading its claim under the Consumer Fraud Act. *Anchor Mortg. Corp. v. Certified Credit Reporting, Inc.*, 2000 U.S. Dist. LEXIS 16867, *5, 2000 WL 1700147, *2 (N.D.Ill. Nov. 8, 2000) (holding that "a nexus to consumer protection is required only if the plaintiff is not a 'consumer'"); *see also J.C. Whitney & Co. v. Renaissance Software Corp.*, 2000 U.S. Dist. LEXIS 6180, *55, 2000 WL 556610, *16 (N.D.Ill. Apr. 19, 2000), *adopted in relevant part, Whitney & Co. v. Renaissance Software Corp.*, 98 F.Supp.2d 981 (N.D.Ill.2000). This is because the Consumer Fraud Act, "does not authorize a suit by a non-consumer where there is no injury to consumers." *Learning Curve Toys, L.P. v. Play Wood Toys, Inc.*, 2000 U.S. Dist. LEXIS 5130, *7, 2000 WL 343497, *2 (N.D.Ill. Mar. 31, 2000) (internal quotations and citations omitted).

> FN2. Carolina does not claim that it is a consumer for purposes of the statute. Instead, Carolina maintains that it "has made allegations sufficient to implicate consumer concerns under Illinois law and the pleading standards of this [c]ourt."

> FN3. Judge Plunkett's holding in *Anchor Mortgage* is narrower than that previously expressed by the Seventh Circuit. *See Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir.1996) ("[Illinois intermediate appellate courts] and federal district courts in Illinois have uniformly held that claims under the Act must meet the consumer nexus test by alleging that the conduct involves trade practices directed to the market generally or otherwise implicates consumer protection concerns."). According to Judge Plunkett, the *Athey* court's statement is "far too broad" given the fact that "many state and federal courts have decided that the consumer nexus requirement applies only to plaintiffs that are not consumers." *See Anchor Mortgage*, 2000 U.S. Dist. LEXIS at *8 n. 1, and at *5-8, WESTLAW CITE (listing cases). Judge Plunkett further notes that the *Athey* court's statement was supported by cases that "involved business-plaintiffs that were not consumers."

> The court agrees with Judge Plunkett's assessment of the statement in *Athey*. *See Duchossois Indus. v. Crawford & Co.*, 2001 U.S. Dist. LEXIS 444, *9, 2001 WL 59031, *3-4 (N.D.Ill. Jan. 12, 2001); *Peter v. Stone Park Enters., L.L.C.*, 1999 U.S. Dist. LEXIS 11385, *17-18, 1999 WL 543210, *6 (N.D.Ill. July 22, 1999).

Carolina maintains that it has pleaded a sufficient consumer nexus. According to Carolina, it has alleged that defendants' misrepresentations (that SL is the exclusive distributor and/or an authorized distributor of Nakajima products) "are likely to cause confusion or to cause mistake or to deceive as to the affiliation, connection, or association of SL ... and Nakajima." Further, Carolina claims, it has also alleged that defendants made these misrepresentations "willfully and with intent to mislead customers, and to create a likelihood of public confusion or misunderstanding."

There are two problems with Carolina's arguments, however. First, the counterclaim paragraphs that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2001 WL 641415 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Carolina cites as containing the above allegations are neither part of, nor incorporated into, Carolina's Consumer Fraud Claim. Second, as defendants point out, the alleged "customers" to which Carolina refers above are not identified as consumers, at least as that term is defined by the Consumer Fraud Act. Defendants assert that the customers of distributors such as Carolina and defendants "purchase goods for resale, which plainly makes them non-consumers" under the Consumer Fraud Act. *See* 815 ILCS 505/1(e). If defendants are correct, Carolina cannot maintain their Consumer Fraud Act claim because it cannot allege a consumer nexus. If defendants are incorrect, Carolina should allege (in the appropriate count or by incorporation) that defendants' misrepresentations were made to consumers.

> FN4. The court has scoured Carolina's counterclaim and can find no allegation contradicting defendants' assertion. Carolina does claim that it is "primarily engaged in the business of the sale of office machines, equipment, accessories, parts and supplies," but it does not say to whom those sales are made. Carolina does, however, identify itself as a wholesale distributor, which means that it presumably sells Nakajima products to retailers. Moreover, Carolina makes no reference whatever to "consumers" in its counterclaims. (Despite this fact, however, Carolina incorrectly asserts in its response brief that its counterclaim alleges that defendants "used Nakajima's trademarks in a manner that is likely to lead *consumers* to be confused regarding its status as an exclusive distributor.")

*4 In conclusion, because the allegations that Carolina relies on to support its pleading of a consumer protection nexus are not incorporated into Carolina's Consumer Fraud Act claim, and because even if they were Carolina still has not pleaded a sufficient consumer protection nexus, the court dismisses Count III. As Count III now reads, Carolina is merely asserting that defendants have been misrepresenting to "customers" that SL is "the exclusive distributor and/or an authorized distributor" of Nakajima products and that, as a result, "Carolina [the true exclusive distributor of Nakajima products]... has been or is likely to be substantially injured in its business ... resulting in lost revenues and profits, and diminished goodwill and reputation." As Judge Grady explained in *Republic Tobacco, L.P. v. North Atl. Trading Co.,* 1999 U.S. Dist. LEXIS 6098, *27-28, 1999 WL 261712, *9 (N.D.Ill. Apr. 9, 1999), "[a]lleged statements to distributors and retailers do not constitute the required connection to consumers." Further, claims that such statements "implicate consumer protection concerns by wrongfully diverting sales from [Carolina]," are simply "far too indirect to satisfy the consumer nexus requirements." *Id.* Like *Republic Tobacco,* however, the court dismisses Count III without prejudice since it may be that Carolina can cure the defects explained above.

> FN5. In so holding, the court does not reach the additional standing argument raised by defendants in a footnote of their reply brief. Carolina is advised to monitor the progress of the case of *Oliveira v. Amoco Oil Co.,* 726 N.E.2d 51, 60-62 (Ill.App.Ct. 4th Dist.2000), *appeal allowed,* 734 N.E.2d 895 (2000).

III. Rule 9(b) Particularity Requirement

Defendants next contend that Carolina has failed to meet the pleading requirement of Fed.R.Civ.P. 9(b), which provides that allegations of fraud or mistake are to be pleaded with particularity, with respect to Counts II, III and IV. Carolina argues that these counts do not sound in fraud and are therefore not subject to the requirements of Rule 9(b).

> FN6. As an initial matter, the court disposes of Carolina's claim that "there is nothing whatsoever within the text of Rule 9(b) or any of the authority interpreting the Rule to indicate that a claim brought under the common law of unfair competition falls within the purview of the Rule." As defendants point out, the UDTPA is simply

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00722-GMS    Document 25-2    Filed 04/17/2006    Page 8 of 20

Not Reported in F.Supp.2d                                                Page 5
Not Reported in F.Supp.2d, 2001 WL 641415 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

a codification of common law unfair competition. *Mars, Inc., v. Curtiss Candy Co.,* 290 N.E.2d 701, 704 (Ill.App.Ct. 1st Dist.1972). Also, as discussed below, Carolina's unfair competition claim relies on the same allegation of defendants' supposed wrongdoing as do its UDTPA and Consumer Fraud Act claims. Thus, the court sees no reason why Carolina's unfair competition claim should not be assessed under the same standard as its claim under the UDTPA.

> FN7. Although Count III is dismissed on other grounds, the court determines whether Rule 9(b) applies to that claim because Carolina may file an amended Consumer Fraud Act counterclaim.

The court finds that because Counts II, III, and IV sound in either fraud or mistake, they are covered by Rule 9(b). The *only* allegation of defendants' wrongdoing in these counts is Carolina's contention, "on information and belief," that "since July 31, 2000," defendants have "misrepresent[ed]" to "customers" that SL "is the exclusive distributor and/or an authorized distributor" of Nakajima products. This alleges one of two things: either defendants knew they were no longer the exclusive distributor and/or an authorized distributor of Nakajima products and they lied by misrepresenting their status, or, at the very least, defendants did not know they were no longer the exclusive Nakajima distributor and/or an authorized distributor and they mistakenly misrepresented their status accordingly. Regardless, Rule 9(b) applies because it provides: " In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." See *B. Sandfield, Inc., v. Finlay Fine Jewelry Corp.,* 1993 U.S. Dist. LEXIS 17703, *7-11, 1993 WL 515863, *2-3 (N.D.Ill.Dec. 13, 1993) (applying Rule 9(b) to Consumer Fraud Act and UDTPA claims involving allegations of pricing misrepresentations made to customers).

*5 This finding is supported by Rule 9(b)'s purpose of protecting defendants' reputations, preventing fishing expeditions, and providing adequate notice of Carolina's claims to defendants. See *Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 777 (7th Cir.1994). In the instant case, Carolina alleges that defendants misrepresented their distributorship status with Nakajima to "customers." This accusation certainly threatens defendants' reputations among the "customers" (whomever they may be). Further, by making these allegations "on information and belief," Carolina appears to be engaging in just the sort of fishing expedition Rule 9(b) was enacted to prevent. And, finally, Carolina's vague references to the individuals to whom defendants allegedly made these representations and the dates on which they were supposedly made-to " customers" and "since July 31, 2000"-are insufficient to put defendants on notice of the claims against them. Thus, applying Rule 9(b) to the instant case is not only appropriate under the unambiguous language of the rule itself, doing so also serves the purposes for which the rule was enacted.

Carolina quotes *Gaddy v. Galarza Motor Sport L.T.D.,* 2000 U.S. Dist. LEXIS 13881, *9, 2000 WL 1364451, *4 (N.D.Ill. Sept. 20, 2000), for the proposition that the Consumer Fraud Act "prohibits not only fraud, but a broad array of unfair practices." True, but the court finds that Carolina's allegations in the instant case sound in fraud or mistake and are therefore subject to the Rule 9(b) particularity requirement. "A violation of the [Consumer Fraud Act] based on misrepresentation or fraud must be plead with the particularity of Rule 9(b) of the Federal Rules of Civil Procedure." *Appraisers Coalition v. Appraisal Inst.,* 845 F.Supp. 592, 608-09 (N.D.Ill.1994) (citing *Ramson v. Layne,* 668 F.Supp. 1162, 1170 (N.D.Ill.1987)); see also *Petri v. Gatlin,* 997 F.Supp. 956, 973 (N.D.Ill.1997); *Azimi v. Ford Motor Co.,* 977 F.Supp. 847, 852-53 (N.D.Ill.1996); *Karpowicz v. GMC,* 1997 U.S. Dist. LEXIS 10604, *16 (N.D.Ill. July 17, 1997) (finding that Rule 9(b) "applies both to claims for common-law fraud, as well as to claims under the ICFA") (citing *Appraisers Coalition v.. Appraisal Inst.,* 845 F.Supp. 592, 609 (N.D.Ill.1994) (applying 9(b) to claims of defamation and commercial disparagement)).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00722-GMS   Document 25-2   Filed 04/17/2006   Page 9 of 20

Not Reported in F.Supp.2d                                                                                                         Page 6
Not Reported in F.Supp.2d, 2001 WL 641415 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Carolina also cites *Recreation Servs. v. Odyssey Fun World,* 952 F.Supp. 594 (N.D.Ill.1997), a case in which the plaintiff, who owned the marks "GREAT ODYSSEY FAMILY FUN CENTERS" and "THE GREAT ODYSSEY Family Fun Centers and Design," sued the defendant under the Consumer Fraud Act for using the mark "ODYSSEY FUN WORLD," which the plaintiff alleged caused actual confusion as well as posing the likelihood of further confusion among consumers. *Id.* at 596. Judge Shadur assumed (without deciding) that the plaintiff's allegations sounded in fraud and concluded that the particularity requirements under 9(b) were met "by the Complaint's straightforward allegations as to [defendant's] conduct of the self-same type of business as [plaintiff] under a confusingly similar name." *Id.* at 598. Thus, *Recreation Services* is inapposite.

*6 Finally, Carolina cites several cases holding that Rule 9(b) does not apply to the trade disparagement claims made in those cases under § 2(8) of the UDTPA or to the Consumer Fraud Act claims that rely on those same allegations. *See Mitsubishi,* 1997 U.S. Dist. LEXIS at *18-20, 26-31, 1997 WL at *7, *10-11; *Hoffman v. Szyszko,* 1995 U.S. Dist. LEXIS 12680, *13-17, 1995 WL 519815, *4-5 (N.D.Ill. Aug. 29, 1995); *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.,* 657 F.Supp. 1486, 1494-95 (N.D.Ill.1987); *see also Floorcoverings Int'l, Ltd. v. Swan,* 2000 U.S. Dist. LEXIS 5855, *12, 2000 WL 528480, *4-5 (N.D.Ill. Apr. 25, 2000) (involving claim under UDTPA only). To begin, these cases are distinguished because Carolina is not alleging trade disparagement under the UDTPA in the instant case; instead, Carolina's UDTPA claim alleges that defendants' misrepresentations "represent their efforts to pass off [SL's] goods and services as those of another and to create a likelihood of public confusion or misunderstanding"-allegations that track the language of §§ 2(1) and (2) of the UDTPA, and that the court finds sound in fraud or mistake.

> FN8. In addition, Carolina did not incorporate its UDTPA claim into its Consumer Fraud Act claim. Thus, even if Carolina had alleged trade disparagement under § 2(8) of the UDTPA, and even if the court found that that allegation did not sound in fraud or mistake (see below), the court would still apply Rule 9(b) to Carolina's Consumer Fraud Act claim.

In addition, to the extent the cases cited by Carolina conclude that allegations of trade disparagement under § 2(8) of the UDTPA do not aver fraud or mistake under Rule 9(b), this court respectfully disagrees. According to § 2(8) of the UDTPA, a person commits trade disparagement when he "disparages the goods, services or business of another by *false or misleading* representation of fact." (emphasis added). Given that definition, Rule 9(b) should apply to such trade disparagement claims under the UDTPA because, as is true in the instant case, allegations of false or misleading statements tend to sound in fraud or mistake. Simply calling a claim "trade disparagement" does not exempt it from averring fraud or mistake.

Moreover, Carolina's argument based on *Mitsubishi, Hoffman, Pain Prevention,* and *Floorcoverings* simply does not follow. According to Carolina, these cases support the conclusion that Carolina's claims "differ fundamentally from fraud claims" because in fraud cases "the defendant personally makes misrepresentations to the plaintiff, so the plaintiff should be able to describe those misinterpretations with particularity in the complaint." Conversely, Carolina asserts, in "trade disparagement/unfair competition cases ... the defendant makes misrepresentations to third parties or to the consuming public generally speaking, and the plaintiff may be unable to allege those statements with particularity." "Thus," Carolina concludes, "Rule 9(b)'s requirements do not apply to such claims." Nonsense. The court will not conclude that Carolina's claims do not sound in fraud or mistake based on the fact that defendants' alleged misrepresentations were not made to Carolina directly.

Two distinct inquiries must be made under Rule 9(b) in the instant case. The first is whether Carolina's UDTPA and Consumer Fraud Act claims sound in fraud or mistake. The second (which arises only if

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the court determines that the claims do sound in fraud or mistake) is whether Rule 9(b) has been met and, if it has not, whether the exception to Rule 9(b) should apply because the facts Carolina needs to allege with particularity are under the defendant's exclusive control. *See Yates v. Newell Rubbermaid Inc. (In re Newell Rubbermaid Sec. Litig.),* 2000 U.S. Dist. LEXIS 15190, *33 (N.D.Ill. Oct. 2, 2000) ("It is well established in this Circuit that a party may be excused from Rule 9(b)'s requirement of pleading with particularity if the information that he is required to plead rests exclusively within the defendants' control or is otherwise unavailable to him.") (citing *Corley v. Rosewood Care Center, Inc.,* 142 F.3d 1041, 1051 (7th Cir.1998); *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 729 n. 6 (7th Cir.1998)).

*7 The court has determined that Carolina's allegations sound in fraud or mistake, making Rule 9(b) applicable. That rule requires Carolina to state at minimum, "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990). Carolina's allegations do not meet these specifications. Accordingly, the court next determines whether the exception to Rule 9(b) applies in the instant case.

In that regard, the court finds that while it is true that defendants' alleged misrepresentations were made to "customers" and not to Carolina directly, there is no reason to apply the exception to the 9(b) particularity requirement in the instant case because the substance of those misrepresentations is not under defendants' exclusive control. *See Jepson v. Makita Corp.,* 34 F.3d 1321, 1328 (7th Cir.1994) (finding that "the plaintiffs cannot ... complain of an inability to ascertain the details of ... communications [because] ... they have as much access as the defendants to the customers who can flesh out the circumstances of the ... [misrepresentations] involved"); *cf. B. Sanfield, Inc. v. J.C. Penney Co.,* 1993 U.S. Dist. LEXIS at *9-10, 1993 WL at *3 (noting that where medium for disseminating alleged misrepresentations is " extremely broad, if not absolutely public," the exception to pleading with particularity is " strikingly inappropriate"). Moreover, even if the exception to Rule 9(b) did apply in the instant case, Carolina should have alleged its grounds for the suspicions it avers "on information and belief." *See Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 924 (7th Cir.1992). Carolina has failed in this regard as well.

Thus, Counts II, III and IV are insufficiently pleaded and therefore dismissed without prejudice.

CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is denied with respect to Count I but granted without prejudice with respect to Counts II, III, and IV. Carolina is given leave to file an amended counterclaim consistent with this opinion on or before June 19, 2001. SL and Lowy shall respond thereto on or before July 9, 2001. The status report by all parties is continued from June 16, 2001, to July 11, 2001, at 9:00a.m.

N.D.Ill.,2001.
Nakajima All Co., Ltd. v. SL Ventures Corp.
Not Reported in F.Supp.2d, 2001 WL 641415 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2002 WL 32693546 (Trial Motion, Memorandum and Affidavit) Nakajima's Response to the Defendants' Objections to Subpoenas (Aug. 6, 2002)
• 2002 WL 32693542 (Trial Motion, Memorandum and Affidavit) Reply in Support of Sl Ventures' and Stephen Lowy's Motion to Compel Discovery (Feb. 21, 2002)
• 2002 WL 32693538 (Trial Motion, Memorandum and Affidavit) Nakajima's Brief Opposing Sl Ventures' and Stephen Lowy's Motion to Compel (Feb. 19, 2002)
• 1:00CV06594 (Docket) (Oct. 24, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                                   Page 1
Not Reported in F.Supp., 1997 WL 805216 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Ruth Ann DILLON and Deborah L. Dougherty, Plaintiffs,
v.
ULTRASOUND DIAGNOSTIC SCHOOLS, a Division of Ultrasound Technical Services, Inc., a Wholly Owned Subsdidary of Whitman Medical Corporation, d/b/a Whitman Education Group, Inc., Defendants.
Kimberly Gallagher and Kimberly A. Price, Plaintiffs,
v.
Ultrasound Diagnostic Schools, a Division of Ultrasound Technical Services, Inc., a Wholly Owned Subsidiary of Whitman Medical Corporation, d/b/a Whitman Education Group, Inc., Defendants.
Tedalvis Boyd, Plaintiff,
v.
Ultrasound Diagnostic Schools, a Division of Ultrasound Technical Services, Inc., a Wholly Owned Subsdidary of Whitman Medical Corporation, d/b/a Whitman Education Group, Inc., Defendants.
Nos. Civ.A. 96-8342, Civ.A. 97-1268, Civ.A. 97-6477.

Dec. 18, 1997.

MEMORANDUM AND ORDER
BRODY, J.
*1 **AND NOW,** this 16th day of December, 1997, upon consideration of defendants' Motions to Dismiss plaintiffs' Complaints and the plaintiffs' Responses, **IT IS ORDERED** that defendants' Motions to Dismiss are **GRANTED** in part and **DENIED** in part as follows:

FN1. The pleadings in these three cases are identical in all material respects. Accordingly, for the purposes of this Order, I will treat the three separately filed complaints and motions to dismiss as one case. Given that the pleadings in *Boyd* are the most recent, when I say "Complaint" in this Order, I refer to the *Boyd* complaint.

In deciding a motion to dismiss, I must accept as true all facts alleged in the Complaint and give the Complaint the liberal construction to which it is entitled. *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). The Complaint should not be dismissed unless the plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. *Ala, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994). I have jurisdiction in these cases based on the diversity of the parties; thus, following *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), I must apply state substantive law and federal rules of procedure. Therefore, Pennsylvania law governs the substantive issues here, and the Federal Rules of Civil Procedure govern the standard for pleading. *See GE Capital Mortgage Services, Inc. v. Pinnacle Mortgage Investment Corp.,* 897 F.Supp. 854, 867 (E.D.Pa.1995). Fed.R.Civ.P. 8(a) requires that a Complaint provide defendants with sufficient notice of the claim against which they will need to defend.

(1) Plaintiffs Ruth Ann Dillon, Deborah L. Dougherty, Kimberly Gallagher, Kimberly Price, and Tedalvis Boyd are former students of the Diagnostic Medical Ultrasound Program at schools owned and operated by defendant Ultrasound Diagnostic Schools ("UDS"). Plaintiffs allege that defendants broke their contracts with them by failing to provide promised educational services and facilities. Pennsylvania law permits students to sue a university or college for breach of contract. *See Barker v. Trustees of Bryn Mawr College,* 278 Pa. 121, 122, 122 A. 220, 221 (Pa.1923) (observing that "the relation between the student and the college is solely contractual in nature"); *see also*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00722-GMS    Document 25-2    Filed 04/17/2006    Page 12 of 20

Not Reported in F.Supp.                                                                           Page 2
Not Reported in F.Supp., 1997 WL 805216 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

*Gundlach v. Reinstein,* 924 F.Supp. 684, 688. (E.D.Pa.1996) ("A review of the relevant Pennsylvania authority reveals that a student may bring a contract action to enforce the specific promises made by his university"). The Pennsylvania courts have suggested that they will recognize contract claims based on a university's promises to provide basic services, such as the courses offered, or basic benefits, such as the credits or degrees to be granted. *See Britt v. Chestnut Hill College,* 429 Pa.Super. 263, 270, 632 A.2d 557, 560 (Pa.Super.1993) (college could not revoke, in response to a student's misconduct, credits it had promised the student); *Cavaliere v. Duff's Business Institute,* 413 Pa.Super. 357, 365, 605 A.2d 397, 401 (Pa.Super.1992) (" '[I]f the contract with the school were to provide for certain specified services, such as for example, a designated number of hours of instruction, and the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable.' ") (quoting *Paladino v. Adelphi Univ.,* 89 A.D.2d 85, 92, 454 N.Y.S.2d 868, 873 (2d Dept.1982)); *Reimer v. Tien,* 356 Pa.Super. 192, 211, 514 A.2d 566, 575 (Pa.Super.1986) (" 'In admitting appellant to its school, appellees contracted to provide a medical education, as well as certain necessities that could be expected at any learning institution."); *see also Ross v. Pennsylvania State University,* 445 F.Supp. 147, 152 (M.D.Pa.1978) ("A student has a reasonable expectation based on statements of policy by Penn State and the experience of former students that if he performs the required work in a satisfactory manner and pays his fees he will receive the degree he seeks").

*2 A few courts have recognized that it may be difficult or unwise to recognize contract claims based on promises other than to render basic services and benefits. For example, in *Cavaliere,* the court refused to recognize a claim that a school had broken its contract with a student by not providing a quality education. It reasoned, "[i]t would be unwise to inject the judiciary into an area where it would be called upon to make judgments despite often insurmountable difficulties both in the formulation of an adequate standard of care and in finding a causal link between the alleged breach and the alleged damages." 413 Pa.Super. at 368, 605 A.2d at 403. *See also Reimer,* 356 Pa.Super. at 211, 514 A.2d at 575 (that one professor taught two courses instead of one was "hardly a breach of contract" where "All the basic courses were taught" and there was "no proof that any of the professors were unqualified").

Here, plaintiffs have alleged both a total failure to provide a basic education in ultrasound, and numerous failures to provide specific basic services and benefits. *See Gundlach,* 924 F.Supp. at 689 (court dismissed contract claim where former student failed to identify specific benefits he was promised and the manner in which defendants reneged on those promises). Plaintiffs' allegations do in part verge on a claim for "educational malpractice" (e.g., plaintiffs claim that the defendants failed "to provide quality education which would enable Plaintiff to procure employment in field of ultrasound," at Complaint, ¶ 10(n)), similar to those which have been rejected in other cases. *See, e.g., Cavaliere,* 413 Pa.Super. at 369, 605 A.2d at 403 (refusing to recognize a general cause of action for educational malpractice, where the allegation is simply that the educational institution failed to provide a quality education). However, the bulk of plaintiffs' Complaints identify specific benefits and services, which defendants allegedly promised, and failed, to provide, so as to state a claim for breach of an educational contract.

> FN2. Plaintiffs' Complaints set forth with specificity in paragraph 10 the defendants' failure to provide: promised equipment (two large laboratories; updated laboratory equipment); curricula (semester hours, laboratory hours, and lecture hours; clinical internships; specific kinds of ultrasound instruction); staff and instructors (faculty skilled in patient care and the pertinent technology); and services (progress reports, grades, transcripts; counselling services; job search assistance and placement guidance).
> Plaintiffs also identify defendants' misrepresentations as to certifications, qualifications, board eligibility, credit

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00722-GMS    Document 25-2    Filed 04/17/2006    Page 13 of 20

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1997 WL 805216 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

accrual and transfer, grades, and adequacy of equipment.

Of course, in order to plead a proper claim for breach of contract under Pennsylvania law, a plaintiff must allege not only the duties broken by the defendants, but also: (1) the existence of a valid and binding contract to which he and the defendants were parties; (2) the contract's essential terms; (3) that he complied with the contract's terms; and (4) the damages resulting from the breach. *Cottman Transmission Sys., Inc. v. Melody,* 851 F.Supp. 660, 672 (E.D.Pa.1994) (citing *Electron Energy Corp. v. Short,* 408 Pa.Super. 563, 597 A.2d 175 (1991), *aff'd without op.,* 533 Pa. 66, 618 A.2d 395 (1992)).

Plaintiffs plead all the requisite elements in their Complaints. First, plaintiffs allege that the general course bulletin, school catalog, and National Guide to Educational Credit for Training Programs entry, which were made available to them as students by the defendants, form a binding contract. *See* Plaintiffs' Exhibits A, B, & C. This comports with Pennsylvania law. *See Ross,* 957 F.2d at 416 (noting that the bulletins, circulars, and regulations made available to the student become part of the contract). Second, plaintiffs point to the essential terms of the contract, and alleges that these terms impose duties upon the defendants, which the defendants broke. (Complaint ¶ 10). Although plaintiffs could identify the provisions with more specificity, given the federal standard of notice pleading, they have done enough to withstand a motion to dismiss. Third, plaintiffs specifically claim that they complied with all the terms of the contract. (Complaint ¶ 12). Finally, plaintiffs allege damages of "great financial losses, expenses, and inconvenience." (Complaint ¶ 13).

*3 Plaintiffs sufficiently state a claim for breach of contract. Accordingly, defendants' Motions to Dismiss are **DENIED** as to plaintiffs' contractual claims;

(2) Plaintiffs also bring claims sounding in tort, alleging that defendants negligently hired incompetent faculty and negligently misrepresented: graduates' board eligibility; instructors' credentials, qualifications, and experience; credit accrual and transfer; and the adequacy, age, and utilization of ultrasound equipment. Plaintiffs' negligence claims are barred by the "economic loss" rule, which prohibits plaintiffs from recovering in tort for economic losses which they are entitled to only because of a contract. *King v. Hilton-Davis,* 855 F.2d 1047, 1051 (3d Cir .1988) (applying Pennsylvania law) ("[w]hen loss of the benefit of a bargain is the plaintiff's sole loss, ... the undesirable consequences of affording a tort remedy in addition to a contract-based recovery [are] sufficient to outweigh the limited interest of the plaintiff in having relief beyond that provided by warranty claims"). The economic loss rule applies to claims of negligent misrepresentation. *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 620 (3d Cir.1995); *Eagle Traffic Control v. Addco,* 882 F.Supp. 417, 419 (E.D.Pa.1995) (applying Pennsylvania law) (economic loss doctrine applies to claims of negligent misrepresentation); *see also Apollo Group, Inc. v. Avnet. Inc.,* 58 F.3d 477, 480 (9th Cir.1995) (applying Arizona law) ("negligent misrepresentation is not an exception to the ' economic loss' rule."). A party who engages in contractual negotiations with another has the ability to protect itself in the contractual language against the other party's innocent, though wrong representations.

Plaintiffs' negligence claims are explicitly based on the same facts as their breach of contract claims. Furthermore, they plead only economic losses (tuition, fees, interest on loans, loss of income while attending school, and future loss of income); they do not allege any personal injuries or property damage. Because plaintiffs seek economic damages for defendants' negligent performance of their contractual obligations, tort recovery is precluded by the economic loss rule. *See Allied Fire & Safety Equipment Co., Inc. v. Dick Enterprises, Inc.,* 972 F.Supp. 922, 1997 WL 532505 (E.D.Pa.1997) (holding subcontractor's claim for negligent performance of contractual obligations barred by Pennsylvania's economic loss rule). Plaintiffs have not presented, either in pleadings or at oral argument, any additional facts that would dictate a different result. Accordingly, defendants' Motions to Dismiss are **GRANTED** as to plaintiffs' negligence claims;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00722-GMS   Document 25-2   Filed 04/17/2006   Page 14 of 20

Not Reported in F.Supp.                                                                                    Page 4
Not Reported in F.Supp., 1997 WL 805216 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

(3) Plaintiffs bring claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 ("UTPCPL"), which protects consumers against unfair and deceptive acts and practices, including misrepresentations regarding the certification, approval, standard, or quality of services. This claim is governed by the pleading standard of Federal Rule of Civil Procedure 9(b) because the UTPCPL is aimed at fraud prevention. Rule 9(b) requires that the factual bases of all averments of fraud or mistake shall be plead with particularity. Plaintiffs incorporate by reference earlier portions of their Complaints, which do allege the factual bases of their fraud claim with particularity, so as to state a claim under the UTPCPL. Accordingly, defendants' Motions to Dismiss are **DENIED** as to plaintiffs' statutory claims; and

*4 (4) Plaintiffs sue not only Ultrasound Diagnostic Schools, but also its parent company, Whitman Medical Corporation. Defendants argue that, because plaintiffs have not alleged Whitman's specific role in the underlying actions, the corporate veil may not be pierced so as to allow Whitman to be sued as a defendant. In order to withstand summary judgment on this issue and retain Whitman as a defendant, the plaintiffs will have to show that Whitman used the corporate structure to perpetrate a fraud or a crime, or that it is necessary to retain Whitman as a defendant to avoid injustice. *See Killian v. McCulloch,* 850 F.Supp. 1239, 1249 (E.D.Pa.1994) (relying on *Ashley v. Ashley,* 482 Pa. 228, 393 A.2d 637 (1978)). In light of the relaxed federal pleading standards, I will allow discovery to proceed as to defendant Whitman, without prejudice to the defendants, who may raise the issue again at a later stage in the litigation. Accordingly, defendants' Motions to Dismiss Whitman as a defendant are **DENIED.**

E.D.Pa.,1997.
Dillon v. Ultrasound Diagnostic Schools
Not Reported in F.Supp., 1997 WL 805216 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:97cv06477 (Docket) (Oct. 20, 1997)

• 2:97cv01268 (Docket) (Feb. 21, 1997)
• 2:96cv08342 (Docket) (Dec. 17, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2004 WL 2758672 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
INTEGRAL RESOURCES (PVT) LIMITED, a Pakistani corporation, Plaintiff,
v.
ISTIL GROUP, INC., a Delaware corporation, Defendant.
No. 03-904 (GMS).

Dec. 2, 2004.

Joseph S. Naylor, Pepper Hamilton LLP, Wilmington, DE, for Plaintiff.
Norman M. Monhait, Rosenthal, Monhait, Gross & Goddess, Wilmington, DE, for Defendant.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

*1 The plaintiff, Integral Resources (PVT) Limited ("Integral"), filed the above-captioned action against ISTIL Group, Inc. ("ISTIL") on September 24, 2003. In its complaint, Integral alleges that ISTIL interfered with its contractual relationship with the Progress Agency ("Progress"), a Ukranian Republic foreign trade firm and agency of the government of Ukraine, by inducing Progress to terminate its contract with Integral. Integral further alleges that ISTIL interfered with prospective contractual relations arising from Integral's long-term business relationship with Progress.

Presently before the court is ISTIL's renewed motion to dismiss Integral's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons that follow, the court will grant ISTIL's motion.

II. BACKGROUND

Integral, a military equipment consultant, is incorporated under the laws of Pakistan, with its principal place of business in Pakistan. ISTIL is a Delaware corporation, with its principal place of business in West Linn, Oregon. ISTIL is engaged in the business of manufacturing and trading steel products.

FN1. ISTIL disputes this allegation, asserting that it is not registered to do business in Oregon and that its principle place of business is Ukraine. However, he court must accept as true the well-pleaded allegations of the complaint. *See Doug Grant Inc. v. Great Bay Casino Corp.,* 232 F.3d 173, 183-84 (3d Cir.2000). Thus, the court will consider Oregon as ISTIL's principle place of business for purposes of this motion.

Integral alleges that, on November 4, 1995, it entered into a contract with Progress (the "Progress Contract") to assist Progress in developing, marketing, and implementing the sale of military equipment-initially the T-80 UD tank-for the government of Pakistan. The Progress Contract was allegedly amended several times after its execution, enlarging the scope of Integral's business relationship with Progress. Specifically, Integral was to be the sole and exclusive commercial consultant on all projects between Progress and the Pakistani government, including, but not limited to, the A1-Kahlid tank project. Additionally, Integral and Progress agreed by amendment that the contract between them would remain in effect as long as the T-80 UD tank remained in service for the Pakistani government.

Integral further alleges that, in 2001, ISTIL embarked on a mission to usurp the economic benefits of the Progress Contract and to disrupt

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00722-GMS    Document 25-2    Filed 04/17/2006    Page 16 of 20

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 2758672 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Integral's business relationship with Progress. According to Integral, ISTIL, with the aid of its Ukrainian lawyers, specifically Volodymyr Petryna ("Petryna"), formed Reventox Consulting Limited ("Reventox"), a company incorporated under the laws of Cyprus. ISTIL then had Petryna approach and falsely advise Progress that it would be permissible to breach the Progress Contract in order to enter into a new agreement with Reventox.

According to the complaint, at the time that ISTIL and Petryna induced Progress to terminate the Progress Contract, they knew that the termination would violate the terms of the contract, and that their efforts to interfere with the contract were unlawful. Petryna allegedly advised ISTIL that there was a need for secrecy and that it should devise a plan to avoid suspicions concerning its actions.

As a result of ISTIL's and Petryna's efforts, Progress allegedly terminated the Progress Contract, entered into a new contract with Reventox (the "Reventox Contract"), and severed its long-standing business relationship with Integral.

*2 Integral additionally alleges that the Reventox Contract was a fraud at its inception because it violated a contract between the Pakistani and Ukranian governments. According to Integral, the terms of the Reventox Contract authorized the payment of millions of dollars of commissions to Reventox for Progress. ISTIL then used these "secret commissions" to pay kickbacks to, among others, the representatives of Progress who allegedly participated in and authorized ISTIL's efforts to steal the Progress Contract.

> FN2. ISTIL's alleged criminal conduct is not at issue in the present case. Thus, the court will not address Integral's allegations of fraud with respect to the Reventox Contract.

On September 24, 2003, Integral filed its complaint, alleging tortious interference with a contract and tortious interference with prospective contractual relations. On November 10, 2003, ISTIL filed a motion to dismiss under the doctrine of *forum non conveniens,* arguing that the case should be heard in Ukraine, not in Delaware. Alternatively, ISTIL moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Integral had failed to state a claim for which relief could be granted under Ukranian law.

On January 5, 2004, the court issued an order denying ISTIL's motion to dismiss, without prejudice, on the ground of *forum non conveniens.* The court declined to issue a ruling on ISTIL's Rule 12(b)(6) motion because the factual record on the choice-of-law issue was not yet fully developed. The court subsequently ordered the parties to conduct limited discovery and requested further briefing on the choice-of-law issue. On April 2, 2004, ISTIL filed a renewed Rule 12(b)(6) motion to dismiss.

### III. STANDARD OF REVIEW

ISTIL moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dismissal is appropriate pursuant to this Rule if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In this inquiry, the court must accept as true and view in the light most favorable to the non-movant the well-pleaded allegations of the complaint. *Doug Grant, Inc. v. Great Bay Casino Corp.,* 232 F.3d 173, 183-84 (3d Cir.2000). The court 'need not accept as true "unsupported conclusions and unwarranted inferences." ' *Id.* (quoting *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 263 n. 13 (3d Cir.1998)) (quoting *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.,* 113 F.3d 405, 417 (3d Cir.1997)). However, it is the duty of the court " 'to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." ' *Id.* at 184 (quoting *City of Pittsburgh,* 147 F.3d at 263).

### IV. DISCUSSION

#### A. Choice of Law

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00722-GMS    Document 25-2    Filed 04/17/2006    Page 17 of 20

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2004 WL 2758672 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Before the court addresses the sufficiency of Integral's complaint, it must determine whether Delaware or Ukranian law applies to Integral's allegations. Delaware courts apply the "most significant relationship test" of the Second Restatement of Conflicts. *See Travelers Indemnity Co. v. Lake,* 594 A.2d 38, 47 (Del.1991) (adopting the most significant relationship test from the Second Restatement of Conflicts). Section 145 of the Restatement directs the court to apply the law of the state that "has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 145. After applying the factors set forth in Sections 145 and 6 and evaluating the contacts according to their relative importance with respect to the alleged tortious acts, the court concludes that Ukraine, not Delaware, has the most significant relationship to the acts. Thus, Ukranian law applies to the claims asserted by Integral.

> FN3. The court will apply Delaware choice of law rules to determine what law governs Integral's claims. *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Brown v. SAP America, Inc.,* No. C.A. 98-507-SLR, 1999 WL 803888, at *4 (D.Del. Sept.13, 1999).

> FN4. Indeed, the only reference to Delaware in the complaint is in paragraph two, which alleges that ISTIL is a corporation organized and existing under the laws of Delaware.

1. Section 145 Factors

*3 Section 145 sets forth the relevant contacts that the court should consider when applying the principles of § 6 to determine the law applicable to an issue. These factors include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicil, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.* The court should evaluate the contacts according to their relative importance with respect to the particular issue. *Id.; see also Travelers Indemnity,* 594 A.2d at 48 ("[T]he Restatement test does not authorize a court to simply add up the interests on both sides of the equation and automatically apply the law of the jurisdiction meeting the highest number of contacts listed in sections 145 and 6. Section 145 has a qualitative aspect.").

The complaint alleges that ISTIL, with the aid of its Ukrainian lawyers, more specifically Petryna, orchestrated a scheme to usurp from Integral the economic benefits of the Progress Contract and its business relationship with Progress. The Progress Contract that is the subject of ISTIL's alleged unlawful conduct was negotiated and performed in Ukraine and Pakistan. The places of injury are, therefore, Ukraine and Pakistan.

> FN5. Neither party has argued that the court should apply Pakistani law.

The place where the conduct causing the injury occurred is Ukraine. Integral alleges that ISTIL and Petryna induced Progress to breach the Progress Contract. ISTIL's wrongful conduct includes placing Petryna at Progress' disposal in Ukraine. As previously discussed, Petryna then allegedly advised Progress that it would be permissible to terminate the Progress Contract and enter into the Reventox Contract. In addition, Integral accuses Petryna of preparing the termination letter that Progress sent to Integral. Furthermore, Petryna allegedly advised ISTIL that it should proceed with secrecy and avoid starting a scandal. Lastly, Integral alleges that Progress ended its business relationship with Integral as a result of ISTIL's and Petryna's interference. Progress is an agency of the Ukraine government. Petryna and his associates were advising Progress and ISTIL from the Yuris Law Offices, located in Ukraine. ISTIL committed the alleged unlawful acts in Ukraine. Thus, the conduct causing the injury occurred in Ukraine.

The third factor the court must consider is the place of incorporation and place of business of the parties. In the present case, this factor does not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00722-GMS    Document 25-2    Filed 04/17/2006    Page 18 of 20

Not Reported in F.Supp.2d    Page 4
Not Reported in F.Supp.2d, 2004 WL 2758672 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

point to any one location. Integral's place of incorporation and principal place of business is Pakistan. ISTIL's place of incorporation is Delaware. According to the complaint, ISTIL's principal place of business is Oregon. Comment e to § 145 is instructive on the importance that the court should afford this factor when evaluating it in light of the other § 145 factors: the "relative importance [of place of incorporation and place of business of the parties] varies with the nature of the interest affected." Restatement (Second) of Conflicts of Laws § 145 cmt. e. In the case of some torts, "the importance of these contacts depends largely upon the extent to which they are grouped with other contacts. The fact, for example, that one of the parties is domiciled or does business in a given state will usually carry little weight of itself." *Id* Given the foregoing, the court concludes that this factor does not favor Delaware. At most, it is neutral.

*4 The last element of § 145, the place where the relationship between the parties is centered, is inapplicable because Integral and ISTIL did not have an existing relationship.

When deciding a choice of law issue such as that before the court, "Delaware courts place considerable emphasis on 'the place where the injury occurred' and 'the place where the conduct causing the injury occurred.' " *Rudisill v. Sheraton Copenhagen Corp.,* 817 F.Supp. 443, 448 n. 7 (D.Del.1993) (citations omitted). Ukraine is one of the places where the injury occurred and the place where the conduct causing the injury occurred. In addition, the place of incorporation and place of business are neutral, and the place where the relationship between the parties is centered is inapplicable. Given its analysis of the § 145 factors, the court concludes that Ukraine has the most significant relationship to the conduct about which Integral complains. Thus, the court will apply Ukrainian law. The inquiry does not end with § 145, however, as the court must also evaluate ISTIL's acts with regard to the § 6 factors.

2. Section 6 Factors

Section 6 of the Restatement provides the following choice of law considerations: (a) the needs of the interstate and international systems (e.g., choice of law rules should seek to further harmonious relations and facilitate intercourse between states); (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of the result; and (g) ease in determination and application of the law to be applied. Restatement (Second) of Conflicts of Laws § 6. Given the principles set forth in § 6, the court finds that Ukranian law applies to Integral's claims.

The needs of the interstate and international systems favor application of Ukranian law. The Progress Contract was formed in order to facilitate the sale of military equipment by Progress to the Pakistani government. Ukraine has an interest in overseeing the negotiation and performance of its military contracts. Delaware has no such interest in the subject matter of the present case.

The relevant policies of the forum also favor Ukraine. Comment e to § 6 states that a court should not apply a forum state's law "where the state of the forum has no interest in the case apart from the fact that it is the place of the trial of the action." Restatement (Second) of Conflicts of Laws § 6 cmt. e. Integral has not alleged that any of ISTIL's wrongful conduct occurred in or affected Delaware. Thus, Delaware's only interest in the case is that it is the place of trial. As previously discussed, Ukraine has an interest in overseeing its military contracts. In addition, Ukraine has a criminal interest in the case-in June 2003, the Attorney General of Ukraine instituted a criminal investigation relating to the termination of the Progress Contract and related criminal acts by Progress and its director.

*5 The third factor, the relevant policies and relative interests of the other interested states, favors Ukraine. While the forum should give consideration to its own relevant policies and the relevant policies of all other interested states, the forum should also appraise the relative interests of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00722-GMS    Document 25-2    Filed 04/17/2006    Page 19 of 20

Not Reported in F.Supp.2d                                                                                                   Page 5
Not Reported in F.Supp.2d, 2004 WL 2758672 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

the states involved in the determination of the particular issue. *Id.* cmt. f. The state whose interests are most deeply affected should have its local law applied. *Id.* Integral alleges that ISTIL interfered with its contract and its business relationship with Progress. Integral asserts further that this interference occurred in Ukraine and that Progress is an agency of the Ukranian government. Furthermore, Integral has sought relief in Ukraine by filing a complaint with the Attorney General of Ukraine and demanding an investigation into ISTIL's and Progress' conduct. *See* Def.'s Br. at 22-23; Berman Dec. Exh. L, at 2; *id.* Exh. M, at 1. In contrast, the policies of the other interested states, particularly Delaware, are not affected. Thus, Ukraine's interests are most deeply affected, and it should have its local law applied.

The protection of justified expectations as well weighs in favor of applying Ukranian law. "[I]t ... [is] unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." Restatement (Second) of Conflicts of Laws § 6 cmt. g. Assuming, as the court must, that ISTIL's conduct occurred in Ukraine, it is reasonable for the court to conclude that ISTIL had justifiably molded its conduct to conform to the requirements of Ukranian, not Delaware, law.

The next factor the court must consider is the basic policies underlying the particular field of law. This factor is most important when differences between the policies of the interested states are not minor. The policies of Delaware and Ukraine, however, are significantly different (*i.e.* Delaware recognizes claims for tortious interference with contract and tortious interference with prospective contractual relationships, while Ukraine does not). Thus, this factor is inapplicable.

Predictability and uniformity of result favor the court's application of Ukranian law. These factors are intended to prevent forum shopping. Integral's decision to pursue this case in Delaware, despite the fact that ISTIL's only alleged connection to the state is that Delaware is its place of incorporation, suggests that Integral is forum shopping. Moreover, as previously discussed, Integral has filed several complaints with the Attorney General in Ukraine and demanded an investigation into ISTIL's conduct in Ukraine-further evidence that Integral is forum shopping.

The final § 6 factor serves as a guideline for courts and addresses the application of choice of law rules. It states that the rules should be simple and easy to apply. The Delaware rules are simple and easy to apply because the court only needs to determine which interested state has the most significant relationship to the issue. In the present case, pursuant to the principles enunciated in § 6, the court concludes that Ukraine has the most significant relationship to ISTIL's conduct. The court, therefore, will apply Ukrainian law to Integral's tort claims.

### B. Integral's Tort Claims

**\*6** Integral's complaint alleges violations of two common law precepts: (1) tortious interference with contract; and (2) tortious interference with prospective contractual relations. As discussed above, the court will apply Ukranian law to Integral's claims. The law of Ukraine, however, does not recognize Integral's claims. Accordingly, the court must dismiss Integral's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because it does not state a cause of action under Ukranian law. *See MM Global Serv., Inc. v. Dow Chem. Co.,* 283 F.Supp.2d 689, 704 (D.Conn.2003) (dismissing common law claims alleging tortious interference with business expectancies, Tortious interference with contractual relationships, and unfair competition because they were not actionable under Indian law); *Atlantic Richfield Co. v. ARCO-Globus Int'l Co.,* No. 95 Civ. 6361, 1996 WL 742863, at \*5 (S.D.N.Y. Dec.31, 1996).

### *ORDER*

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendant's Renewed Motion to Dismiss

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 2758672 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

(D.I.47) is GRANTED.

D.Del.,2004.
Integral Resources (PVT) Ltd. v. Istil Group, Inc.
Not Reported in F.Supp.2d, 2004 WL 2758672 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03cv00904 (Docket) (Sep. 24, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.